# Order

Michigan Supreme Court
Lansing, Michigan

May 22, 2009

136591

PEOPLE OF THE STATE OF MICHIGAN,
          Plaintiff-Appellant,

v

JEREMY FISHER,
          Defendant-Appellee.

_____/

Marilyn Kelly,
*Chief Justice*

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
*Justices*

SC: 136591
COA: 276439
Wayne CC: 04-000969

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we VACATE our order of October 3, 2008. The application for leave to appeal the March 25, 2008 judgment of the Court of Appeals is DENIED, because we are no longer persuaded that the questions presented should be reviewed by this Court.

WEAVER, J. (*dissenting*).

I dissent from this Court's order and conclusion that leave was improvidently granted because, after hearing oral arguments, I would reverse the judgment of the Court of Appeals for the reasons stated in Judge Talbot's dissent.

YOUNG, J. (*dissenting*).

I dissent from this Court's order denying leave to appeal. I would reverse the judgment of the Court of Appeals because the police officer's entry into the defendant's home was lawful under the emergency aid exception to the Fourth Amendment of the United States Constitution.

Officer Chris Goolsby and his partner responded to a noise disturbance on Steven Road in Brownstown, Michigan. When they arrived, two pedestrians informed Officer Goolsby that there was a man on adjoining Allen Road who was "going crazy." The officers went to Allen Road and saw a man later identified as defendant, Jeremy Fisher, through the front window of a house "walking around the residence screaming and throwing stuff." Officer Goolsby could hear objects breaking. Officer Goolsby observed that a truck parked in the driveway had a damaged front end and that fence posts along the property line had been knocked down. When the officers tried to speak with defendant, he repeatedly swore at them and told them to get a search warrant. Officer Goolsby observed fresh blood on the hood of the truck, some clothes inside the truck, and the back door. Officer Goolsby believed that he saw a cut on defendant's hand. The

officers also observed that three house windows had been broken and the glass was still outside on the ground.

Officer Goolsby testified that he attempted to enter the house "[b]ecause we did not know if there's somebody else inside" and he was concerned that someone else was inside "[b]ecause of the amount of blood we found on the outside." Officer Goolsby was able to open the front door, but only 12 to 18 inches because a couch was blocking it. Officer Goolsby heard a dog bark, looked to his right, through the glass of the door, and saw defendant sitting on his bed and pointing a rifle at Officer Goolsby. Officer Goolsby retreated.

Defendant was subsequently arrested and charged with felonious assault[1] and possession of a firearm during the commission of a felony.[2] Defendant sought to suppress Officer Goolsby's testimony about the rifle incident, arguing that it was obtained in violation of his Fourth Amendment rights. The prosecutor argued that Officer Goolsby's entry was lawful under the emergency aid exception to the Fourth Amendment. The trial court granted defendant's motion without an evidentiary hearing. The prosecutor appealed and the Court of Appeals majority reversed and remanded for an evidentiary hearing.[3] On remand, the trial court held an evidentiary hearing and again granted defendant's motion.

The prosecutor again sought leave to appeal. The Court of Appeals granted leave and affirmed in a split, unpublished opinion.[4] The Court of Appeals majority held that the emergency aid exception to the Fourth Amendment did not apply because

> [a]lthough there was evidence that there was an injured person on the premises, the mere drops of blood did not signal a likely serious, life-threatening injury. This is particularly so given that the police observed a cut on defendant's hand, which likely explained the trail of blood, but also that defendant was very much on his feet and apparently able to see to his own needs.[5]

Judge Talbot dissented and argued that Officer Goolsby's entry was lawful under the emergency aid doctrine because

---

[1] MCL 750.82.

[2] MCL 750.227b.

[3] *People v Fisher*, unpublished opinion per curiam of the Court of Appeals, issued December 20, 2005 (Docket No. 256027).

[4] *People v Fisher*, unpublished opinion per curiam of the Court of Appeals, issued March 25, 2008 (Docket No. 276439) (hereinafter referred to as *Fisher II*).

[5] *Fisher II* at 2.

[g]iven defendant's bizarre behavior, it was reasonable for officers to surmise that he might need medical or psychiatric intervention to prevent him from incurring injury. Further, the mere observation of an injury to defendant's hand is not dispositive of his need or lack of need for aid. The very fact that police observed an injury, coupled with defendant's behavior, made it reasonable to surmise that he may have additional injuries, which were not readily observable, particularly given the condition of the vehicle and fence posts surrounding the home.[6]

The prosecutor sought leave to appeal, which this Court granted.[7]

"We review a trial court's factual findings in a ruling on a motion to suppress for clear error. To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo."[8]

Under the emergency aid exception to the Fourth Amendment, "a police officer may enter a dwelling without a warrant when he reasonably believes that a person inside is in need of medical assistance."[9] Under this standard, probable cause is not required for entry[10] and "[t]he officer's subjective motivation is irrelevant."[11]

Faced with an irrational and violent man, who was creating a disturbance and not responding to the police officers, and a blood trail leading from a truck to the house,

---

[6] *People v Fisher,* unpublished dissenting opinion by Talbot, J., filed March 25, 2008 (Docket No. 276439) (hereinafter referred to as *Fisher II* dissent).

[7] *People v Fisher*, 482 Mich 1007 (2008).

[8] *People v Attebury*, 463 Mich 662, 668 (2001); see also *People v Williams*, 472 Mich 308, 313 (2005).

[9] *City of Troy v Ohlinger*, 438 Mich 477, 481 (1991); see also *People v Davis*, 442 Mich 1, 25-26 (1993).

[10] *Davis*, *supra* at 11, 20.

[11] *Brigham City v Stuart*, 547 US 398, 404 (2006). The United States Supreme Court also added that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justified [the] action.'" *Id.*, quoting *Scott v United States*, 436 US 128, 138 (1978) (emphasis added in *Brigham City*). See also *People v Williams*, 472 Mich 308, 314 n 7 (2005) ("The reviewing court considers the objective facts relating to the [seizure]; the officer's subjective state of mind is not relevant to the determination whether detention was proper.").

Officer Goolsby could reasonably believe that someone inside, including defendant, needed medical assistance. Indeed, as Judge Talbot observed, "it was reasonable for officers to surmise that [defendant] might need medical or psychiatric intervention to prevent him from incurring injury."[12]

The Court of Appeals majority's reliance on the "mere drops of blood" to suggest that there was no "signal of a likely serious, life-threatening injury" is misplaced.[13] The United States Supreme Court rejected a similar argument in *Brigham City*, *supra*. In that case the officer was called to a noise disturbance at 3:00 a.m. and observed a juvenile punch an adult in the mouth, resulting in a bloody lip. The Utah Supreme Court held that the officer's subsequent entry was unlawful because "the injury caused by the juvenile's punch . . . did not give rise to an 'objectively reasonable belief that an unconscious, semi-conscious, or missing person feared injured or dead [was] in the home.'"[14] The United States Supreme Court reversed and explained:

> Nothing in the Fourth Amendment required them to wait until another blow rendered someone "unconscious" or "semi-conscious" or worse before entering. The role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties; an officer is not like a boxing (or hockey) referee, poised to stop a bout only if it becomes too one-sided.[15]

A similar analysis applies here. Although the "mere drops of blood" might indicate a minor injury, nothing required the officers to have confirmation of a severe injury. Moreover, the cut on defendant's hand was only one explanation for the trail of blood. The cut also indicated a physical altercation, which could have reasonably led Officer Goolsby to believe that defendant injured someone else. All of the evidence pointed to the fact that the defendant may have needed psychiatric attention.

---

[12] *Fisher II* dissent at 2.

[13] *Fisher II* at 2.

[14] *Brigham City*, *supra* at 401-402, quoting *Brigham City v Stuart,* 122 P3d 506, 513 (Utah, 2005).

[15] *Brigham City*, *supra* at 406.

Because the facts supported a "reasonabl[e] belie[f] that a person inside [was] in need of medical assistance," I would reverse the Court of Appeals judgment and remand the case for further proceedings.

CORRIGAN, J., joins the statement of YOUNG, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 22, 2009

_____
Clerk

p0519