# SUPREME COURT OF THE UNITED STATES

## MICHIGAN *v.* JEREMY FISHER

### ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF APPEALS OF MICHIGAN

No. 09–91. Decided December 7, 2009

PER CURIAM.

Police officers responded to a complaint of a disturbance near Allen Road in Brownstown, Michigan.[*] Officer Christopher Goolsby later testified that, as he and his partner approached the area, a couple directed them to a residence where a man was "going crazy." Docket No. 276439, 2008 WL 786515, *1 (Mich. App., Mar. 25, 2008) *(per curiam)* (alteration and internal quotation marks omitted). Upon their arrival, the officers found a household in considerable chaos: a pickup truck in the driveway with its front smashed, damaged fenceposts along the side of the property, and three broken house windows, the glass still on the ground outside. The officers also noticed blood on the hood of the pickup and on clothes inside of it, as well as on one of the doors to the house. (It is disputed whether they noticed this immediately upon reaching the house, but undisputed that they noticed it before the allegedly unconstitutional entry.) Through a window, the officers could see respondent, Jeremy Fisher, inside the house, screaming and throwing things. The back door was locked, and a couch had been placed to block the front door.

The officers knocked, but Fisher refused to answer. They saw that Fisher had a cut on his hand, and they asked him whether he needed medical attention. Fisher ignored these questions and demanded, with accompanying profanity, that the officers go to get a search warrant.

——————
[*]We have taken the facts from the opinion of the Michigan Court of Appeals. Except where indicated, the parties do not dispute the facts.

Officer Goolsby then pushed the front door partway open and ventured into the house. Through the window of the open door he saw Fisher pointing a long gun at him. Officer Goolsby withdrew.

Fisher was charged under Michigan law with assault with a dangerous weapon and possession of a firearm during the commission of a felony. The trial court concluded that Officer Goolsby violated the Fourth Amendment when he entered Fisher's house, and granted Fisher's motion to suppress the evidence obtained as a result—that is, Officer Goolsby's statement that Fisher pointed a rifle at him. The Michigan Court of Appeals initially remanded for an evidentiary hearing, see Docket No. 256027, 2005 WL 3481454 (Dec. 20, 2005) *(per curiam),* after which the trial court reinstated its order. The Court of Appeals then affirmed over a dissent by Judge Talbot. See 2008 WL 786515, at *2; *id.,* at *2–*5. The Michigan Supreme Court granted leave to appeal, but, after hearing oral argument, it vacated its prior order and denied leave instead; three justices, however, would have taken the case and reversed on the ground that the Court of Appeals misapplied the Fourth Amendment. See 483 Mich. 1007, 765 N. W. 2d 19 (2009). Because the decision of the Michigan Court of Appeals is indeed contrary to our Fourth Amendment case law, particularly *Brigham City* v. *Stuart*, 547 U. S. 398 (2006), we grant the State's petition for certiorari and reverse.

"[T]he ultimate touchstone of the Fourth Amendment," we have often said, "is 'reasonableness.'" *Id.,* at 403. Therefore, although "searches and seizures inside a home without a warrant are presumptively unreasonable," *Groh* v. *Ramirez*, 540 U. S. 551, 559 (2004) (internal quotation marks omitted), that presumption can be overcome. For example, "the exigencies of the situation [may] make the needs of law enforcement so compelling that the warrantless search is objectively reasonable." *Mincey* v. *Ari-*

*zona*, 437 U. S. 385, 393–394 (1978).

*Brigham City* identified one such exigency: "the need to assist persons who are seriously injured or threatened with such injury." 547 U. S., at 403. Thus, law enforcement officers "may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Ibid.* This "emergency aid exception" does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. *Id.,* at 404–405. It requires only "an objectively reasonable basis for believing," *id.,* at 406, that "a person within [the house] is in need of immediate aid," *Mincey, supra,* at 392.

*Brigham City* illustrates the application of this standard. There, police officers responded to a noise complaint in the early hours of the morning. "As they approached the house, they could hear from within an altercation occurring, some kind of fight." 547 U. S., at 406 (internal quotation marks omitted). Following the tumult to the back of the house whence it came, the officers saw juveniles drinking beer in the backyard and a fight unfolding in the kitchen. They watched through the window as a juvenile broke free from the adults restraining him and punched another adult in the face, who recoiled to the sink, spitting blood. *Ibid.* Under these circumstances, we found it "plainly reasonable" for the officers to enter the house and quell the violence, for they had "an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning." *Ibid.*

A straightforward application of the emergency aid exception, as in *Brigham City*, dictates that the officer's entry was reasonable. Just as in *Brigham City*, the police officers here were responding to a report of a disturbance. Just as in *Brigham City*, when they arrived on the scene they encountered a tumultuous situation in the house—

and here they also found signs of a recent injury, perhaps from a car accident, outside. And just as in *Brigham City*, the officers could see violent behavior inside. Although Officer Goolsby and his partner did not see punches thrown, as did the officers in *Brigham City*, they did see Fisher screaming and throwing things. It would be objectively reasonable to believe that Fisher's projectiles might have a human target (perhaps a spouse or a child), or that Fisher would hurt himself in the course of his rage. In short, we find it as plain here as we did in *Brigham City* that the officer's entry was reasonable under the Fourth Amendment.

The Michigan Court of Appeals, however, thought the situation "did not rise to a level of emergency justifying the warrantless intrusion into a residence." 2008 WL 786515, at *2. Although the Court of Appeals conceded that "there was evidence an injured person was on the premises," it found it significant that "the mere drops of blood did not signal a likely serious, life-threatening injury." *Ibid.* The court added that the cut Officer Goolsby observed on Fisher's hand "likely explained the trail of blood" and that Fisher "was very much on his feet and apparently able to see to his own needs." *Ibid.*

Even a casual review of *Brigham City* reveals the flaw in this reasoning. Officers do not need ironclad proof of "a likely serious, life-threatening" injury to invoke the emergency aid exception. The only injury police could confirm in *Brigham City* was the bloody lip they saw the juvenile inflict upon the adult. Fisher argues that the officers here could not have been motivated by a perceived need to provide medical assistance, since they never summoned emergency medical personnel. This would have no bearing, of course, upon their need to assure that Fisher was not endangering someone else in the house. Moreover, even if the failure to summon medical personnel conclusively established that Goolsby did not subjectively be-

Per Curiam

lieve, when he entered the house, that Fisher or someone else was seriously injured (which is doubtful), the test, as we have said, is not what Goolsby believed, but whether there was "an objectively reasonable basis for believing" that medical assistance was needed, or persons were in danger, *Brigham City, supra,* at 406; *Mincey, supra,* at 392.

It was error for the Michigan Court of Appeals to replace that objective inquiry into appearances with its hindsight determination that there was in fact no emergency. It does not meet the needs of law enforcement or the demands of public safety to require officers to walk away from a situation like the one they encountered here. Only when an apparent threat has become an actual harm can officers rule out innocuous explanations for ominous circumstances. But "[t]he role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties." *Brigham City, supra,* at 406. It sufficed to invoke the emergency aid exception that it was reasonable to believe that Fisher had hurt himself (albeit nonfatally) and needed treatment that in his rage he was unable to provide, or that Fisher was about to hurt, or had already hurt, someone else. The Michigan Court of Appeals required more than what the Fourth Amendment demands.

\*   \*   \*

The petition for certiorari is granted. The judgment of the Michigan Court of Appeals is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

## MICHIGAN *v.* JEREMY FISHER

### ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF APPEALS OF MICHIGAN

No. 09–91.   Decided December 7, 2009

JUSTICE STEVENS, with whom JUSTICE SOTOMAYOR joins, dissenting.

On October 31, 2003, Jeremy Fisher pointed a rifle at Officer Christopher Goolsby when Goolsby attempted to force his way into Fisher's home without a warrant. Fisher was charged with assault with a dangerous weapon and possession of a dangerous weapon during the commission of a felony.  The charges were dismissed after the trial judge granted a motion to suppress evidence of the assault because it was the product of Goolsby's unlawful entry.  In 2005 the Michigan Court of Appeals held that the trial court had erred because it had decided the suppression motion without conducting a full evidentiary hearing.  On remand, the trial court conducted such a hearing and again granted the motion to suppress.

As a matter of Michigan law it is well settled that police officers may enter a home without a warrant "when they reasonably believe that a person within is in need of immediate aid." *People* v. *Davis*, 442 Mich. 1, 25, 497 N. W. 2d 910, 921 (1993).  We have stated the rule in the same way under federal law, *Mincey* v. *Arizona*, 437 U. S. 385, 392 (1978), and have explained that a warrantless entry is justified by the "'need to protect or preserve life or avoid serious injury,'" *ibid*.  The State bears the burden of proof on that factual issue and relied entirely on the testimony of Officer Goolsby in its attempt to carry that burden. Since three years had passed, Goolsby was not sure about certain facts—such as whether Fisher had a cut on his hand—but he did remember that Fisher repeatedly swore

at the officers and told them to get a warrant, and that Fisher was screaming and throwing things. Goolsby also testified that he saw "mere drops" of blood outside Fisher's home, No. 276439, 2008 WL 786515, *2 (Mich. App., Mar. 25, 2008) *(per curiam)* (summarizing Goolsby's testimony), and that he did not ask whether anyone else was inside. Goolsby did not testify that he had any reason to believe that anyone else was in the house. Thus, the factual question was whether Goolsby had "an objectively reasonable basis for believing that [Fisher was] seriously injured or imminently threatened with such injury." *Brigham City* v. *Stuart*, 547 U. S. 398, 400 (2006).

After hearing the testimony, the trial judge was "even more convinced" that the entry was unlawful. Tr. 29 (Dec. 19, 2006). He noted the issue was "whether or not there was a reasonable basis to [enter the house] or whether [Goolsby] was just acting on some possibilities," *id.*, at 22, and evidently found the record supported the latter rather than the former. He found the police decision to leave the scene and not return for several hours—without resolving any potentially dangerous situation and without calling for medical assistance—inconsistent with a reasonable belief that Fisher was in need of immediate aid. In sum, the one judge who heard Officer Goolsby's testimony was not persuaded that Goolsby had an objectively reasonable basis for believing that entering Fisher's home was necessary to avoid *serious* injury.

The Michigan Court of Appeals affirmed, concluding that the State had not met its burden. Perhaps because one judge dissented, the Michigan Supreme Court initially granted an application for leave to appeal. After considering briefs and oral argument, however, the majority of that Court vacated its earlier order because it was "no longer persuaded that the questions presented should be reviewed by this Court." 483 Mich. 1007, 765 N. W. 2d 19 (2009).

Today, without having heard Officer Goolsby's testimony, this Court decides that the trial judge got it wrong. I am not persuaded that he did, but even if we make that assumption, it is hard to see how the Court is justified in micromanaging the day-to-day business of state tribunals making fact-intensive decisions of this kind. We ought not usurp the role of the factfinder when faced with a close question of the reasonableness of an officer's actions, particularly in a case tried in a state court. I therefore respectfully dissent.