CORNELIA G. KENNEDY, Circuit Judge,
concurring in part and dissenting in part.
I concur with much that the majority has said, and agree that much of the government’s evidence was obtained in violation of the Fourth Amendment and must be suppressed. However, I disagree with the majority’s analysis on two points. First, I believe that exigent circumstances existed on the night of February 4 that allowed Deputy Clark to advance into the house and enter the upstairs bedroom where Tatman was located because Tatman had been violent earlier in the evening and the officer received credible information that Tatman had access to illegal, fully automatic weapons. Second, I believe that Tatman consented to the seizure of items during the October search conducted several months later even when the plain view doctrine would not allow seizure. Thus, I respectfully dissent on these two points.
On the first point, I would find that exigent circumstances existed on February 4 that allowed Clark to proceed to the upstairs bedroom where Tatman was dressing. “[A]lthough ‘searches and seizures inside a home without a warrant are presumptively unreasonable,’ Groh v. Ramirez, 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (internal quotation marks omitted), that presumption can be overcome.” Michigan v. Fisher, — U.S. -, 130 S.Ct. 546, 548, 175 L.Ed.2d 410 (2009). I agree with the majority that the officer was permitted to enter the home on Mrs. Tatman’s consent, until the point that Tatman objected. At that point, *178 he could go no further without a warrant, unless he had exigent circumstances allowing him to proceed deeper into the house. I disagree with the majority that there were no exigent circumstances here. “The presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent.” United States v. Bates, 84 F.3d 790, 796 (6th Cir.1996); see also Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Here, the officer had come across considerable evidence — including visible physical injuries to Tatman’s wife — that Tatman had been violent just a few hours prior. When questioned about this, Tat-man did not deny his behavior, and the officer had both the intention and the probable cause to arrest Tatman. Tatman agreed to leave with the officer, saying “If I need to go, I’ll go.” Because Tatman had been roused from his sleep and was not fully dressed, he asked for and received permission from Clark to go upstairs to his bedroom to put on different clothing. The other officer accompanying Clark had left the area by this time. Significantly, while Clark waited, he received information from Mrs. Tatman that Tat-man had access to fully automatic weapons. These were not ordinary firearms, but illegal weapons that Congress “believed ... by their very nature, were extremely dangerous and served virtually no purpose other than furtherance of illegal activity.” United States v. Dunlap, 209 F.3d 472, 478 n. 12 (6th Cir.2000) (quoting United States v. McKelvey, 7 F.3d 236, 1993 WL 339704, at *6 (6th Cir. Sept.1, 1993) (per curiam)), abrogation on other grounds recognized by United States v. Camacho-Arellano, 614 F.3d 244, 250-51 (6th Cir.2010). In my view, the combination of all circumstances, including the recent violence by Tatman plus his access to an illegal and peculiarly dangerous weapon, created exigent circumstances justifying the officer’s entry further into the household. For that reason, I would reverse the district court and hold that the fully automatic firearm the officer saw in plain view in the bedroom at that time should not be suppressed.
However, once Tatman had been secured and removed from the house, and the illegal firearm removed, the exigent circumstances rule ends. Cf. United States v. Johnson, 22 F.3d 674, 680 (6th Cir.1994). And I agree with the majority that Mrs. Tatman’s subsequent consent to search was not valid, and the officers had no other right to perform a warrantless search. Thus, I agree that any evidence found on February 4 after the defendant was secured and out of the house should be suppressed. I also agree with the majority that the search warrant issued two days later was invalid, and any evidence obtained under it must also be suppressed.
However, I part ways with the majority once more. I believe that the district court erred when it suppressed evidence obtained during the October search, which was conducted pursuant to Tatman’s explicit and written consent. The majority notes that a consent to search is not a consent to seize, thereby requiring that seizing officers satisfy the Fourth Amendment in some other way, say, by invoking the plain view doctrine. I agree that this is the rule, “unless of course the consent goes so far.” 4 W. LaFave, Search and Seizure § 8.1(c), p. 36 (4th ed.2004).
Here, the consent goes so far as to allow a seizure. Tatman did not just consent to a search, but he also explicitly authorized that “any contraband or evidence of a crime found during a search can be seized and used against me in any court of law or other proceeding.” The scope of this consent should be interpreted according to *179 “what ... the typical reasonable person [would] have understood” the consent to include. Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). I am not persuaded that “the typical reasonable person” would interpret Tatman’s consent form to authorize seizure of “contraband or evidence of a crime” only when the Fourth Amendment already allowed seizure under the plain view doctrine. I think the better interpretation is that Tatman consented to the seizure of items when it was reasonable to do so: that is, when there was a reasonable basis for believing that an item discovered is “contraband or evidence of a crime.” Because there was a reasonable basis for believing that the parts kit was “contraband or evidence of a crime,” the officers acted within the bounds of Tatman’s voluntary consent — and therefore the Fourth Amendment — when they seized it.
Accordingly, I would affirm in part and reverse in part the district court’s suppression of evidence. I would allow the admission of (1) evidence relating to the fully automatic weapon seen in plain view in Tatman’s bedroom on the night of February 4 and (2) evidence seized during the October search pursuant to Tatman’s consent. Because the majority affirms the district court’s suppression of this evidence, I respectfully dissent in part.