RAWLINSON, Circuit Judge,
concurring in part, and dissenting in part:
I would pose the issue in this case as whether it was clearly established law that a warrantless entry predicated on a perceived emergency violates the Fourth Amendment despite the lack of probable cause. In my view, that point of law was not clearly established, and should result in our affirming the grant of qualified immunity to all the officers who are defendants in this case.
Unquestionably, the discrete incident that precipitated the entry in this case was Mrs. Huffs response to the question regarding whether there were guns in the house. The majority recites a sanitized account of this event, stating that Mrs. Huff “went into the house” and “testified that she responded that she would go get her husband.” Majority Opinion, p. 542. However, the district court’s findings of fact, which the majority concedes must be credited, see Majority Opinion, p. 543^44, differs markedly from the majority’s rendition. Indeed, the district court found that when asked whether there were guns in the house, rather than responding, Mrs. Huff turned and ran into the house. Mrs. Huffs precipitous departure understandably prompted safety concerns. Sergeant Ryburn testified as follows regarding his actions after Mrs. Huff declined the suggestion to go inside the home:
Q. So when she said “no,” did you decided [sic] to start questioning her as if you were inside the house?
A. Yes. And that’s why I asked if there was any weapons in the house.
Q. In targeted violence situations, does that question have a particular meaning to you?
A. Absolutely because of, again, the threat that he was going to blow up or shoot up the school. I wanted to make sure neither one of them could access any weapons from inside the house, and that’s where they normally get the weapons from *551 is from either their parents or relatives or friends.
Q. Did Mrs. Huff say “no” to your question about whether there were guns in the house?
A. She didn’t say anything at all. She just turned around and went into the house.
Q. Did she say she was going to get her husband?
A. No.
Q. When Mrs. Huff turned and went into the house, were you concerned?
A. Absolutely.
Q. Were you scared?
A. I was scared because I didn’t know what was in that house and, again, I’ve seen too many officers killed in shootings. I did not want one of us to be injured. So I went in and followed her in the house.
Q. Did you go into the house to search for guns?
A. No.
Q. Why did you go into the house?
A. Because I didn’t want her to access a weapon or Vincent Huff accessing a weapon.
Q. Why didn’t you just grab her? Stop her?
A. It all happened so quick. As soon as I asked her about the weapons, she turned and ran into the house. I didn’t have a chance to. Caught me by surprise.
In my view, the cases cited by the majority that address circumstances where law enforcement has targeted a person or an item for search or seizure are not the appropriate guideposts for our analysis. I would look instead to those cases that specifically address the scenario where officer safety concerns prompted the entry.
In Brigham City v. Stuart, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), the United States Supreme Court was called upon to “consider whether police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury.” Id. at 400, 126 S.Ct. 1943. The Supreme Court “eonclude[d] that they may.” Id.
In its analysis, the Supreme Court focused on “the appropriate Fourth Amendment standard governing warrantless entry by law enforcement in an emergency situation.” Id. at 402, 126 S.Ct. 1943 (citations omitted). Without mentioning a probable cause requirement, the Supreme Court upheld the warrantless entry because “the officers had an objectively reasonable basis for believing” that an emergency situation existed. Id. at 406, 126 S.Ct. 1943.
The Supreme Court’s analysis in Brigham City is consistent with its earlier pronouncement in Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). Randolph involved the warrantless search of a shared dwelling over the express refusal of a co-resident of the dwelling. See id. at 106, 126 S.Ct. 1515. Although the Supreme Court determined that there was no valid consent by Randolph, and the results of the search were “unreasonable and invalid as to him,” id., in responding to the dissent’s argument that the ruling would “shield!] spousal abusers and other violent co-tenants,” id. at 117, 126 S.Ct. 1515 (citation omitted), the majority observed that:
!I]t would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or to determine whether violence (or threat of violence) has just *552 occurred or is about to (or soon will) occur ... Thus, the question whether the police might lawfully enter over objection in order to provide any protection that might be reasonable is easily answered yes ...
Id. at 118, 126 S.Ct. 1515 (citation omitted).
At least one other circuit had applied the analysis articulated in Brigham City to uphold a warrantless search as of 2007, when this challenged entry occurred. In United States v. Huffman, 461 F.3d 777, 780 (6th Cir.2006), there was a report of shots fired. Police were dispatched to the scene, and observed bullet holes and glass. See id. The officers did not observe any blood or signs of injury. See id. After there was no response to the officers’ knock and announcement of their presence, the officers entered the residence. See id. Huffman was asleep in a chair with a fully loaded assault rifle on a table in front of him. See id. Huffman was arrested and charged with firearm violations. See id. Huffman’s motion to suppress on the basis of a Fourth Amendment violation was denied. See id. at 781. The district court concluded that the facts “were sufficient to establish exigent circumstances justifying entry into the residence without a warrant.” Id.
In discussing the exigent circumstances exception to the warrant requirement, the Sixth Circuit cited Brigham for the proposition that there are “four situations that may give rise to exigent circumstances: 1) pursuit of a fleeing felon, 2) imminent destruction of evidence, 3) the need to prevent a suspect’s escape, and 4) a risk of danger to the police or others.” Id. at 782 (citation omitted) (emphasis added). The Sixth Circuit explained that “to satisfy the exigent circumstances exception [the government] must show that there was a risk of serious injury posed to the officers or others that required swift action.” Id. (citation omitted). The Sixth Circuit, as was the case in Brigham City, did not mention probable cause.
Although the more dated cases cited by the majority import a probable cause requirement into the exigent circumstances analysis, Brigham City, Huffman and other more recent cases discussing exigent circumstances do not. See Michigan v. Fisher, — U.S. ——, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009) (describing the Brigham City holding as embodying the “emergency aid exception,” requiring “only an objectively reasonable basis for believing that a person within the house is in need of immediate aid[.]” Id. at 548 (citations, alteration and internal quotation marks omitted)); see also United States v. Snipe, 515 F.3d 947 (9th Cir.2008) (“Considering the totality of the circumstances, law enforcement must have an objectively reasonable basis for concluding that there is an immediate need to protect others or themselves from serious harm.” Id. at 951-52 (emphasis added)); Armijo v. Peterson, 601 F.3d 1065, 1071 (10th Cir.2010) (“[T]he exigent circumstances exception permits warrantless home entries when officers reasonably believe that some actor or object in a house may immediately cause harm to persons or property not in or near the house.” (Emphasis in the original)).
In any event, as of 2007 when the events in this case occurred, at a minimum it was unclear whether a warrantless entry into a home by police officers who feared for their safety violated the Fourth Amendment. Under the rationale articulated in Brigham City, Randolph and Huffman, a police officer could have reasonably believed that he was justified in making a warrantless entry to ensure that no one inside the house had a gun after Mrs. Huff ran into the house without answering the *553 question of whether anyone had a weapon. See, e.g., United States v. Paopao, 469 F.3d 760, 766 (9th Cir.2006), as amended (“Depending on the circumstances, the exigencies of a situation may make it reasonable for officers to enter a home without a warrant in order to conduct a protective sweep.”) (quoting United States v. Cavely, 318 F.3d 987, 995-96 (10th Cir.2003).) Accordingly, I conclude that it was not clearly established that the actions taken by Sergeant Ryburn and Officer Zepeda violated the Fourth Amendment. As a result, I would affirm the district court’s decision granting qualified immunity to all four officers involved in the incident.
I, therefore, concur in that portion of the opinion holding that Officers Roberts and Munoz were entitled to qualified immunity. I respectfully dissent from that portion of the opinion holding that Sergeant Ryburn and Officer Zepeda were not entitled to qualified immunity.