**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 28, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff–Appellee,

v.

ISAAC STEWART,

     Defendant–Appellant.

No. 12-2076
(D.C. No. 1:10-CR-02055-BB-1)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **SEYMOUR**, and **LUCERO**, Circuit Judges.

Isaac Stewart appeals the district court's denial of his motion to suppress. We agree with the district court that exigent circumstances justified police officers' warrantless entry into Stewart's apartment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

# I

On the evening of June 11, 2010, an individual called 911 and reported that his neighbors were having "a dispute and it sounds like somebody is injured." The caller, Stewart's neighbor, reported that a woman was "screaming in pain" and shouting "it hurts" while a man was yelling and cursing at her, and that the dispute had been going on for approximately half an hour. The caller identified the apartment at which the dispute was occurring—Stewart's apartment—and provided his own address. After the call was disconnected, the dispatcher called the tipster back and confirmed the prior report. The caller stated that he believed there were children in the apartment.

While the neighbor remained on the phone with the 911 operator, three officers were dispatched to Stewart's residence. The neighbor continued to hold until he observed officers arrive, confirming with the operator that officers had arrived at the correct apartment. Three officers approached the front entrance of Stewart's home, which was secured by a wrought iron security gate that opened onto a small, enclosed patio. After the officers repeatedly announced their presence, Stewart emerged from his apartment carrying a crying baby. According to one of the responding officers, Stewart was "breathing heavily," "sweating," seemed "[v]ery upset," and "appeared to be agitated." Stewart asked why the officers were there, and they explained that a disturbance had been reported and that they needed to conduct a welfare check of the residence. Stewart refused consent, but the officers nevertheless opened the gate and entered the enclosed patio. Stewart was handcuffed after a pat-down search.

The officers then proceeded to the door of the apartment and knocked several times while announcing their presence as police officers. Through a window, they observed a woman lying on a couch. Although the woman initially failed to respond, she eventually opened the door and allowed the officers to enter the apartment. Two women were in the living room and a man, not Stewart, was in a bedroom. One of the officers proceeded to enter what was determined to be Stewart's bedroom, where he inspected a closet "to make sure nobody was inside." There, he discovered two shotguns which he believed had been altered by the addition of pistol grips and the shortening of barrels.

At that point, the responding officers removed the occupants of the apartment and called a detective, who took over the investigation and obtained a search warrant for Stewart's apartment. Officers seized three firearms, including a shotgun that required federal registration. The shotgun had been altered to have a barrel length of approximately thirteen and a half inches and an overall length of approximately twenty-three inches.

Stewart was charged with possession of a firearm not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871. He filed a motion to suppress the evidence obtained from the search of his apartment, which the district court denied. Stewart then entered a conditional guilty plea reserving his right to appeal the denial of his motion to suppress. He was sentenced to twenty-seven months' imprisonment with three years of supervised release. Stewart now appeals the denial of his motion to suppress.

## II

### A

"In reviewing a denial of a motion to suppress, we view the evidence in the light most favorable to the government, accepting the district court's factual findings unless clearly erroneous." United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1226 (10th Cir. 2008) (citation omitted). We review the ultimate determination of reasonableness under the Fourth Amendment de novo. Id.

Courts have long recognized as a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (quotation omitted). However, if the "exigencies of the situation make the needs of law enforcement so compelling" that a home "search is objectively reasonable under the Fourth Amendment," a warrant is not required. Id. (quotation omitted). One such exigency "is the need to assist persons who are seriously injured or threatened with such injury." Id. When faced with such circumstances, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." Id.

In determining whether the "emergency aid exception" justifies warrantless entry into a home, the question "is not what [the officer] believed, but whether there was an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger." Michigan v. Fisher, 558 U.S. 45, 47, 49 (2009) (per curiam) (quotation omitted). The government need not provide "ironclad proof of a likely serious, life-

threatening injury to invoke the emergency aid exception"; the reasonable belief standard "is more lenient than the probable cause standard." United States v. Porter, 594 F.3d 1251, 1258 (10th Cir. 2010) (quotation omitted).

Thus the question before us is whether the facts provided an objectively reasonable basis for believing that someone in Stewart's home was seriously injured. We conclude that they did. Police had received a reliable report[1] that a woman at Stewart's residence had been screaming in pain for a lengthy period of time and yelling "it hurts." When officers arrived just minutes after the call, Stewart answered the door breathing heavily, sweating, and agitated, suggesting he was recently involved in a physical altercation. These facts created an objectively reasonable basis for "prudent, cautious, and trained" officers to believe that a woman inside the apartment was seriously injured or in immediate danger. See Porter, 594 F.3d at 1258.

We acknowledge the facts in the present case may not be as compelling as those in Brigham City, where officers witnessed a juvenile punch an adult, 547 U.S. at 401, or Fisher, where broken glass and blood were apparent on Fisher's property and officers saw Fisher screaming and throwing things, 558 U.S. at 45-46. However, the circumstances here were more suggestive that "medical assistance was needed, or persons were in

---

[1] In considering whether a tipster is reliable, we consider: "(1) whether the informant lacked 'true anonymity' . . . ; (2) whether the informant reported contemporaneous, firsthand knowledge; (3) whether the informant provided detailed information about the events observed; (4) the informant's stated motivation for reporting the information; and (5) whether the police . . . corroborate[d] information provided by the informant." United States v. Chavez, 660 F.3d 1215, 1222 (10th Cir. 2011). The call at issue satisfies at least the first four factors.

danger," id. at 49, than those in several cases in which we have held that the emergency aid exception applies.

For example, in United States v. Najar, 451 F.3d 710 (10th Cir. 2006), a police dispatcher received a 911 call but heard only silence. Id. at 712. He attempted to return the call several times, and each time the phone was answered but disconnected immediately. Id. When officers arrived on scene, a man answered the door, claimed he was the only one in the mobile home, and denied making the calls. Id. We concluded that "the totality of the circumstances" demonstrated "reasonable grounds to believe someone in the trailer may have been in need of emergency aid and immediate action was required." Id. at 720.

Similarly, in Porter, a woman reported that the defendant, who had been convicted of murder and was recently released from prison, had threatened her with a handgun and had been drinking. 594 F.3d at 1253-54. Another woman took the gun from Porter, and the victim of the threats left Porter's home. Id. When police arrived, Porter answered but only partially opened the door and stood with his left hand hidden, refusing to show his hands. Id. at 1254. When Porter glanced to his left, an officer saw a baseball bat near the door. Id. "[W]orried about the bat and possibly a gun," the officer grabbed Porter, pulled him onto the porch, and entered the residence. Id. Because the government did not argue that officer safety concerns justified the subsequent search, we considered only whether "the officers could reasonably believe a civilian needed immediate aid." Id. at 1256. Noting that both the firearm and the woman who had been threatened were unaccounted

for, we held that "the circumstances created a reasonable belief that someone within the premises may be in immediate danger, justifying the police entry." Id. at 1259.

Stewart argues that this case is controlled by Lundstrom v. Romero, 616 F.3d 1108 (10th Cir. 2010). There, a neighbor called 911 to report that she heard a woman slapping and yelling at a toddler. Id. at 1115. A police officer arrived at Lundstrom's residence approximately forty minutes later. Id. The officer rang the doorbell, Lundstrom answered the door, and the officer said that she was responding to a 911 call. Id. Lundstrom became hostile, using profanity and shouting that there was no child at his residence, and slammed the door. Id. Lundstrom's girlfriend came out of the house and was handcuffed, but Lundstrom refused to exit the home. Id. at 1116-17. Police requested that dispatch contact the tipster, who confirmed her earlier report but stated that if there were no children at the home then it must be the wrong address. Id. at 1117. Eventually, Lundstrom came out of his residence. Id. Police handcuffed him and entered the house to search for occupants, but did not find any children. Id. at 1117-18. We held that exigent circumstances did not justify the search of Lundstrom's home because at the time the officers entered, the only two occupants of the house were outside and handcuffed, and there was nothing to indicate the presence of a child or suggesting someone inside the house was in immediate danger or seriously injured. Id. at 1128. Importantly, we noted, the 911 caller "indicated she might have reported the wrong address." Id.

We agree with the district court that the circumstances at issue differ from Lundstrom in several important respects. In the case at bar, the 911 caller confirmed that

police had arrived at the correct residence, unlike in <u>Lundstrom</u>, where the caller conveyed doubt that she had identified the correct home. Moreover, the report at issue in <u>Lundstrom</u>, that a woman was yelling at and slapping a child, is far less suggestive of a serious injury than the 911 call in this case. The tipster stated that an adult woman had been "screaming in pain" and crying "it hurts" for about half an hour while a man was cursing loudly at her. Finally, the officers who arrived on scene in <u>Lundstrom</u> were not presented with any evidence suggesting a child was present or that an altercation had recently occurred. In contrast, Stewart answered the door "breathing heavily," "sweating," and "agitated," which suggested he had recently been involved in an altercation.

Nor are we persuaded by Stewart's remaining arguments. Stewart argues that exigencies did not justify the entry because there was no report of weapons or violence. But this argument ignores the obvious inference that a woman screaming in pain while a man yells at her is being subjected to serious violence. Similarly, Stewart's reliance on the fact that the screaming woman had apparently left Stewart's residence by the time officers arrived does not affect our conclusion. There is no evidence officers knew she had been removed from the premises, and the "reasonableness of a police officer's actions is evaluated from the perspective of a reasonable officer on the scene," rather than with the benefit of hindsight. <u>Id.</u> at 1120. We are also unconvinced that there is a meaningful distinction between the neighbor in this case calling 911 and the actual victim making the call in <u>Porter</u>, 594 F.3d at 1253-54, because the tipster demonstrated numerous indicia of reliability. <u>See</u> <u>Chavez</u>, 660 F.3d at 1222 (noting hallmarks of

reliability for tipsters). Finally, the existence of other plausible explanations for a woman screaming "it hurts" does not render the belief that someone inside Stewart's home was in immediate danger unreasonable. "Reasonable belief does not require absolute certainty; the standard is more lenient than the probable cause standard." Porter, 594 F.3d at 1258 (citation omitted).

We conclude that the totality of the circumstances created an objectively reasonable basis for believing that someone within Stewart's apartment may be seriously injured or threatened with such injury.

**B**

Stewart also argues that the manner and scope of officers' search of his apartment was unreasonable. However, Stewart did not raise this argument in his motion to suppress below. "[A] suppression argument raised for the first time on appeal is waived (i.e., completely barred) absent a showing of good cause for why it was not raised before the trial court." United States v. Burke, 633 F.3d 984, 988 (10th Cir. 2011). This rule "applies not only where the defendant failed to file a suppression motion at all in the district court, but also where the motion filed lacked the specific issues raised on appeal." Id. at 989. Without any showing of good cause for his failure to raise a manner and scope argument below, Stewart's argument on appeal is waived.

## III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.[2]

Entered for the Court


Carlos F. Lucero
Circuit Judge

---

[2] Appellant's Motion to Strike the Government's March 28, 2013 Rule 28(j) letter is **DENIED** as moot. Because the government's 28(j) letter advances no new arguments and does not expand the record, we deem it irrelevant to the disposition of this appeal.