Filed 2/4/16  P. v. Hector CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENNIS HECTOR,<br><br>    Defendant and Appellant. | A144534<br><br>(Lake County<br>Super. Ct. No. CR 934572) |

**INTRODUCTION**

In this appeal, appellant Hector challenges a warrantless entry into his home, contending the trial court erred when it denied his motion to suppress because the exigent circumstances exception had dissipated by the time the deputies entered his home.  We have reviewed the record here and conclude the officers engaged in objectively reasonable conduct when they entered Hector's home, in light of the exigencies of the situation.  We therefore uphold the trial court's denial of his motion to suppress and affirm the judgment.

**STATEMENT OF THE CASE**

On March 7, 2014, the Lake County District Attorney filed an information charging appellant with cruelty to an animal (Pen. Code, § 597, subd. (a)),[1] false imprisonment (§ 236), resisting, delaying or obstructing a peace officer (§ 148,

_____

[1] Unless otherwise stated, all statutory references are to the Penal Code.

subd. (a)(1)), and being under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (a)). The information further alleged appellant was on bail in a separate case at the time of the incident resulting in these charges (§ 12022.1), had two prior strikes (§ 1170.12, subd. (a)-(d), § 667, subd. (b)-(i)), and had served one previous prison term (§ 667.5, subd. (b)).

Appellant filed a motion to suppress evidence on April 7, 2014, and a supplemental pleading on May 28, 2014. The trial court denied his motion after a hearing on November 12, 2014. Appellant entered a no contest plea to one count of animal cruelty on February 6, 2015. The several remaining counts, enhancements and allegations were then dismissed in view of his no contest plea. The trial court sentenced Hector to three years in state prison and also imposed an additional concurrent one-year sentence for a misdemeanor in another case.

On March 10, 2015, appellant filed a timely notice of appeal.

### STATEMENT OF FACTS

On the morning of January 24, 2014, Lake County sheriff's deputy Devincenzi answered a report of a woman screaming in an area behind a bar in Clear Lake Keys. The deputy sauntered down a boat ramp behind the tavern. He then heard a female screaming words to the effect of, "No. Don't. Stop." A male voice responded, "I'll fucking kill you." Devincenzi believed the yelling came from a home across the water and drove in his patrol car toward the location of the screams. An unidentified person, seeing the marked patrol car, pointed in the direction of a house from which the noise was emanating. Approaching the front door of the home, Devincenzi heard the screams of a woman and he banged on the door. Immediately, the screaming ceased. The deputy then heard brief mutterings and movement inside the home and eventual silence.

The deputy knocked several times on the front door, advising those inside he was an officer, and moved about the front of the home to see what was happening inside. He also went to the rear of the home. Devincenzi was unable to gain any view into the

2

interior.  He returned to the front and again continued knocking on the door, announcing who he was.  After 15 minutes without success, another unit arrived at the location to assist the deputy.  Deputy Barreto joined Devincenzi in knocking on the door to gain entry.  One of them told those inside, "Sheriff's office.  Not going away.  Open the door or we're going to kick it in."  Eventually the officers had to kick in the door because they still obtained no response from the parties inside and they were concerned about the safety of the woman who had been screaming.

Upon entering the residence, the officers found a woman covered with blood in the living room.  They proceeded around a corner between the living room and the kitchen and encountered appellant coming up the hallway.  The officers learned from the woman that appellant had beaten the woman's dog to death after the canine ate appellant's pet parakeet.  Any blood on the woman was from her efforts to assist the dog after the beating.  The woman told the deputies she was unable to answer their knocking because appellant would not permit her to do so.  The officers suspected appellant was under the influence of methamphetamine, and they found devices for using methamphetamine in the bathroom and living room.

At the end of the hearing on the motion to suppress, at which only Deputy Devincenzi testified, both sides presented their arguments.  The trial court determined the screaming by a female and the response by a male, "I'll fucking kill you," followed by silence for 15 minutes during which officers were demanding entry, were enough to make the entry exigent circumstances.  Indeed, the court noted "[i]t would be absolutely patently absurd to require [Devincenzi] to stop and get a search warrant when someone might be being killed on the other side of the door. . . .  This is a classic exigent circumstance.  Someone screaming bloody murder, the police have to be able to get inside.  The fact that he waited 15 minutes to have backup so he wasn't risking his own life is just common sense. . . .  That's the most classic exigent circumstance I've ever heard in 30 years in this business."

3

**DISCUSSION**

Appellant contends the deputies' initial entry into the residence was without proper evidence of exigent circumstances. He contends by the time deputies went into the home, the problem witnessed by Devincenzi had dissipated. The trial court below found there was no Fourth Amendment violation. To the court, the objective evidence of what the deputy observed and heard supported a need for quick action. Especially important to the court were the screams by the woman inside pleading aloud, "No. Don't. Stop," along with the male retort of, "I'll fucking kill you." Additionally, after repeated knocks and requests for someone inside to open the door, no one inside was willing to accommodate the deputy's request and open the door. This noncompliance with the officer's request and the silence that persisted in spite of the demand for entry for a period of 15 minutes confirmed the exigency of official action once backup assistance arrived. This was the trial court's assessment of the legal issues here and we see no basis for disturbing its correctness.

In *Brigham City v. Stuart* (2006) 547 U.S. 398 (*Stuart*), the court unanimously determined entry into a residence without a warrant to assist persons who are seriously injured or threatened with such injury is an exigent circumstance excusing a warrant. (*Stuart*, at p. 403.) "[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." (*Ibid.*) Furthermore, a court's assessment of the challenged conduct is viewed from an objective standard of reasonableness, not the subjective motivation of an officer. (*Id.* at p. 404.) In *Stuart*, the police approached the back door of the home and heard evidence of a fracas going on inside the residence. They saw a youth being restrained by four adults, with the teenager breaking loose and striking one of the adults. "In these circumstances, the officers had *an objectively reasonable basis* for believing both that the injured adult might need help and that the violence in the kitchen was just beginning. Nothing in the *Fourth Amendment* required them to wait until another blow

4

rendered someone 'unconscious' or 'semi-conscious' or worse before entering.  The role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties . . . ."  (*Id.* at p. 406, first italics added, second italics in original; see *Michigan v. Fisher* (2009) 558 U.S. 45, 48–49.)

Our Supreme Court has adopted the objective reasonableness standard in exigent circumstances analysis where officers face critical safety concerns at a residence in *People v. Troyer* (2011) 51 Cal.4th 599 (*Troyer*).  In *Troyer*, police responded to a reported shooting at a home shortly after noon.  When they arrived, present on the front porch was a female, who had been shot several times, and a male, who was assisting her.  A second male was bleeding from a head wound and had blood on his face and shirt.  The woman had no ability to explain the situation and the bleeding male was not always coherent.  While he did tell police no one was inside the residence, his demeanor and injury caused the officers to believe he was not candid.  They felt the need to enter to determine if others needed assistance.  In walking through the interior of the home, they came to a locked bedroom and forced entry after no one answered the officers' knock.  Inside the bedroom, the police found marijuana.  (*Id.* at pp. 603–604.)

The Court applied the "emergency aid exception" to the requirement of a warrant in this case.  (*Troyer, supra*, 51 Cal.4th at p. 605.)  "[T]he exception 'requires only "an objectively reasonable basis for believing . . ." [citation] that "a person within [the house] is in need of immediate aid," ' [Citation.]  'We are to approach the Fourth Amendment . . . with at least some measure of pragmatism.  If there is a grave public need for police to take preventive action, the Constitution may impose limits, but it will not bar the way.' "  (*Troyer*, at pp. 605–606.)  The police conduct in the case was clearly motivated by noncriminal interests; criminal notions do not determine reasonableness under such instances.  The *Troyer* majority referred to then Circuit Judge Warren Burger on this point when he wrote " 'the business of policemen and firemen is *to act,* not to speculate or meditate on whether the report is correct.  People could well die in emergencies if

5

police tried to act with the calm deliberation associated with the judicial process.' " (*Id.* at p. 606.) In light of what the officers saw at the front porch, along with the initial report of individuals shooting at each other, the court determined entry and inspection of the rooms inside the home was objectively reasonable, and the discovery of drugs was sustained.[2]

In light of this precedent, and using objective reasonableness as our measure, we must agree with the determination of the trial court in the matter. After experiencing the alert by the neighbor and then hearing screams and threats to kill the woman who was screaming, the officers were obligated to do what they did without a warrant. Devincenzi's decision to wait for backup help did not cancel the exigencies he alone heard at arrival. It was reasonable for him to wait for help for his own protection and to assist in the possible control of what was happening inside the home. Overall, his conduct was objectively appropriate and appellant's challenge is, echoing the trial court, "absurd."

## CONCLUSION

We affirm the ruling of the trial court in its finding the motion to suppress be denied based on the emergency of the situation described by the officer.

## DISPOSITION

There being no other challenge to the conviction, the judgment is affirmed.

---

[2] In his brief, appellant discusses an out-of-state decision, *Hannon v. State* (Nev. 2009) 207 P.3d. 344. Our Supreme Court in *Troyer* chose not to follow *Hannon*, finding it "distinguishable and, in any event, not binding on us." (*Troyer*, *supra*, 51 Cal.4th at p. 610.) In the Nevada case, the officers heard no screams or threats of violence at the front door, as took place here. Furthermore, the occupants of the apartment *answered* the front door after requests by the police. (*Hannon v. State*, at p. 345.) There was no need for a forced entry as we are presented with here.

_____
DONDERO, J.

We concur:


_____
HUMES, P.J.


_____
MARGULIES, J.



A144534

7