Filed 4/15/14  P. v. Williams CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALLEN WILLIAMS,<br><br>    Defendant and Appellant. | A138275<br><br>(San Mateo County<br>Super. Ct. No. SC076465A) |

Defendant Allen Williams appeals from a judgment convicting him of infliction of corporal injury on a spouse and assault by means of force likely to cause great bodily injury. He contends the court abused its discretion in excluding statements by the victim that she had initiated the physical confrontation, undermining his claim of self-defense. He also argues that he received ineffective assistance of counsel because his attorney failed to assert additional theories rendering the victim's statements admissible, that he failed to move to suppress evidence acquired through a warrantless entry of his home and to object to inadmissible evidence. We conclude there were no prejudicial errors and reject defendant's claim of ineffective assistance of counsel. We shall therefore affirm the judgment.

**Factual and Procedural Background**

Defendant was charged by an amended information with one count of corporal injury on his spouse (Pen. Code, § 273.5 subd. (a))[1] and one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)). The information also

_____

[1] All statutory references are to the Penal Code unless otherwise noted.

alleged numerous enhancement allegations, including eight prior convictions and a prior prison term within five years of the present offenses (§ 667, subd. (a)), and the commission of a "third strike." (§ 1170.12, subd. (c)(2).)

The following evidence was presented at trial:

On May 6, 2013, defendant's wife called 9-1-1for help. She told dispatchers she had just been attacked by her husband and was hiding in her neighbor's backyard. This information was relayed to Officer David Manion who was dispatched to their home in the City of San Mateo.

On his arrival, the door to the house was open but Manion at first saw no one. He then observed defendant on the porch and when defendant started to enter the home, Manion stopped and handcuffed him. Defendant told the officer, "I was going to turn myself in" and "I was wrong, I admit it." Manion noticed defendant was bleeding from a cut on the back of his head. Defendant told Manion that his wife had hit him with a cane. Manion searched inside the home and observed blood on the wall, baseboard, carpet, and comforter of the master bedroom. Outside the home, in a garbage can located on the sidewalk, he found a bloodied wooden cane, a pillow, and a man's undershirt.

When defendant's wife approached, with a swollen face and in apparent pain, she was rushed to the emergency room for medical attention. On the way to the hospital, she told the paramedic that her husband hit her with a closed fist multiple times. She had a broken jaw, missing teeth, oral lacerations, multiple fractured ribs, and bruising around her eye, chest, and arm.

Defendant proffered testimony, which was excluded, that a few days after being discharged from the hospital, the wife spoke with her friend, Anne Savage, and told her "I don't like what I did, I put my husband in jail" and that she "started it." [2]

---

[2] The proffer was based on a statement by Savage related in a police report. In arguing for the admission of the statement defense counsel pointed out, "Ann Savage also attributes to Jane Doe the statement that her husband had been drinking and he said something offensive, she responded by grabbing a cane and striking him repeatedly over the head following which, quote, it was on, close quote."

A jury found defendant guilty of both counts and found true the allegation that he personally inflicted great bodily injury. Defendant waived a jury trial on the enhancement allegations and the court found true all but one of his prior convictions. The court sentenced defendant to 39 years to life imprisonment. Defendant filed a timely notice of appeal.

**Discussion**

1. *The court did not abuse its discretion in excluding the wife's hearsay statements.*

Defendant contends the trial court erroneously excluded evidence of incriminating statements his wife made to Anne Savage. Days after being discharged from the hospital, in a phone conversation with Anne Savage, defendant's wife stated that she "started it" after defendant, who had been drinking, said something offensive, that she did not like what she had done, and that she put her husband in jail. Defendant argues that these statements were admissible as statements against his wife's penal interest and were crucial to his self-defense claim.

Evidence Code section 1230 provides that hearsay statements are admissible under the exception for declarations against penal interest. The party seeking to admit such evidence must show "that the declarant is unavailable, that the declaration was against the declarant's penal interest, and that the declaration was sufficiently reliable to warrant admission despite its hearsay character." (*People v. Cudjo* (1993) 6 Cal.4th 585, 607.) "To determine whether the declaration passes the required threshold of trustworthiness, a trial court 'may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant.' " (*Ibid.*) Declarant's statements are not sufficiently reliable for admission simply " '*because* it incorporates an admission of criminal culpability.' " (*People v. Duarte*, 24 Cal.4th 603, 611.)

The trial court excluded the proffered hearsay statements of defendant's wife to Anne Savage primarily on the ground that the statements were unreliable because of their inconsistency with other statements the wife had made. On two separate occasions the

wife told police officers that defendant punched and kicked her and that, in response, she struck him in the head with a wooden cane. Defendant had also offered to prove that in a conversation with her friend Kelly Graham, the wife stated that defendant was intoxicated and belligerent, that after an exchange of words he pushed her and caused her to fall against a window sill, and that, as a response, she grabbed the cane and struck him over the head.

The court granted the prosecutor's motion to exclude these statements under Evidence Code sections 1230 and 352. The court explained its ruling as follows: "From the evidence before the court as presented by the proponent, this court finds that the offered statements that are attributed to Jane Doe through the testimony of Kelly Graham and Anne Savage do not meet the required criteria for their admission under the declarations against interest exception to the hearsay rule. The two statements offered by the defense conflict with one another. In the statement to Kelly Graham, Jane Doe allegedly asserts that Allen Williams pushed her, causing her to fall to the ground before she picked up a cane and struck defendant on the head. In the statement to Anne Savage, Jane Doe purportedly picked up a cane and struck defendant repeatedly over the head with her cane; with no mention being made to her having been pushed. There are however certain similarities in each statement[], including that defendant had been drinking and was either belligerent or said something offensive to Jane Doe. [¶] This court has also made an analysis under Evidence Code § 352. The initial statements made by Jane Doe to the 9-1-1 dispatcher and responding paramedic were previously found to be sufficiently reliable to allow their admission into evidence. Jane Doe made other statements in addition to these which contradict the statements she purportedly made to Kelly Graham and Anne Savage. There is also question as to Jane Doe's motivation when these statements [were] made to the defense witnesses. At some point after Allen Williams' arrest, Jane Doe decided to stop cooperating with the prosecution and law enforcement and has refused to testify at trial."

"We review a challenge to a trial court's choice to admit or exclude evidence under section 352 for abuse of discretion." (*People v. Branch* (2001) 91 Cal.App.4th 274,

4

282.) A trial court's exercise of discretion under Evidence Code section 352 "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) Reversal is required only if it is reasonably probable that a result more favorable to defendant would have been reached had the excluded evidence been received. (*People v. Watson* (1956) 46 Cal.2d 818, 837.)

If the court's statement that the wife "decided to stop cooperating with the prosecution and law enforcement and has refused to testify at trial" was made in explanation of why the court considered the wife's statements not to be trustworthy, reliance on that factor was improper. When deciding if incriminating statements made by an unavailable witness are reliable, Evidence Code section 913, subdivision (a) states that "no presumption shall arise because of the exercise of the privilege [to not testify], and the trier of fact *may not* draw any inference therefrom as to the credibility of the witness or as to any matter at issue in the proceeding." (Italics added.) Nonetheless, reading the court's remarks in context, it is apparent that the court's conclusion that the necessary element of trustworthiness was lacking was not based exclusively or even primarily on this factor. As the trial court pointed out, the statements defendant's wife made to Anne Savage and Kelly Graham conflict with one another. In one version, the wife purportedly picked up a cane and struck defendant repeatedly over the head, initiating the physical confrontation. In the other version, which is consistent with her contemporaneous statements to the police and the paramedic, she struck the defendant after he began the confrontation by pushing her to the ground. Moreover, although the court could not properly rely on the wife's refusal to testify, it could properly note her expressed concern over causing her husband to be jailed in evaluating the reliability of her description of events. Based on the totality of the evidence presented, there was no abuse of discretion in excluding the wife's hearsay statement that she started the fight, nor did the exclusion preclude defendant from presenting his defense.

Even if there was any error in excluding the wife's statements, the error was harmless in light of the overwhelming evidence of defendant's guilt. The undisputed

evidence of the nature and gravity of his wife's injuries makes clear that even if the jury were to have believed that his wife initiated the confrontation, defendant's response went far beyond anything necessary to defend himself.

The right to self-defense extends only to the degree of force that a reasonable person would employ under similar circumstances. (*People v. Clark* (2011) 201 Cal.App.4th 235, 250.) Only force that a reasonable person similarly situated would deem necessary to insure their safety is permissible. (*Ibid*.) "For acts done in self-defense to remain lawful, the force that one uses must be only such as appears reasonably necessary, in view of the circumstances, to prevent the impending injury." (19 Cal.Jur.3d (2014) Criminal Law: Defenses, § 51.) "Thus, under a charge of assault with a deadly weapon, the probable danger of a lesser degree than great bodily injury will not justify the exercise of the right of self-defense." (*Ibid*.)

Here, even if the wife attacked defendant first and struck him three times in the back of the head with a cane, it is evident that defendant responded with significantly greater force than necessary. The wife was not wielding a knife or anything other than an apparently light-weight cane not likely to cause serious injury. The defendant could not reasonably have believed it was necessary, to ensure his own safety, to beat and kick his wife enough to break her jaw in three places, break seven of her ribs, knock teeth out, and bruise her in the eye, chest, and arm. Indeed, the futility of the self-defense defense in this case is highlighted by the evidence that when the police arrived at the scene, defendant spontaneously acknowledged, "I was wrong, I admit it" and "I was going to turn myself in."

2. *Defendant has not established a claim for ineffective assistance of counsel.*

Defendant asserts that he did not received his constitutionally guaranteed right of the effective assistance of counsel. Under the standard set forth in *Strickland v. Washington* (1984) 466 U.S. 668, 687, in order to succeed on a claim of ineffective assistance of counsel, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Here, defendant bases

his contention of inadequacy on counsel's performance with respect to four pieces or categories of evidence.

    a. *Failure to obtain admission of the wife's statements to Anne Savage.*

Defendant asserts that after the court sustained the prosecution's objection to the admission of his wife's incriminating statements under Evidence Code section 1230, his counsel should have offered the statements under Evidence Code section 1202. It appears that the statements would have been admissible for a limited purpose if offered under that section.

"Evidence that would have been admitted to attack or support the credibility of a hearsay declarant if he or she had actually testified is admissible to attack or support the hearsay declaration." (Simons, Cal. Evidence Manual (2013 ed.) § 2:17; Evid. Code, § 1202.) However, "the prosecution may not offer for their truth the inconsistent statements of a declarant who does not testify at trial." (*People v. Blacksher* (2011) 52 Cal.4th 769, 808.) Defendant's wife was a hearsay declarant. The statements she made to the 9-1-1 dispatcher and the paramedic were properly received in evidence. (See subdivision *c., post.*) The truth of these statements was contradicted, at least in part, by her statements to Anne Savage. Therefore, although the incriminating statements were inadmissible under Evidence Code section 1230, they were admissible under Evidence Code section 1202 for the limited purpose of evaluating the truth of the hearsay statements that were admitted. Although deference must ordinarily be given to counsel's tactical decisions, we can think of no possible strategic reason for having failed to advance this alternative ground for the admission of the statements to Anne Savage. The admissibility of this evidence was considered outside the presence of the jury and it was unquestionably in defendant's interest to cast doubt on the credibility of what the wife told the officers and the paramedic.

Nonetheless, even if counsel was deficient in failing to seek admission of this evidence under Evidence Code section 1202, there was no prejudice. (See *In re Crew* (2011) 52 Cal.4th 126, 150 ["If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's

performance was deficient."].) For the reasons discussed above, even on the assumption that consideration of this evidence for the limited permissible purpose would have caused the jury to doubt whether defendant was the original aggressor—a dubious assumption—the extent of the wife's injuries, coupled with defendant's spontaneous acknowledgement of guilt, leaves little room to believe that admission of this evidence would have affected the outcome of the trial.

b. _Failure to seek suppression of evidence obtained by warrantless entry of the home._

Defendant also contends his attorney's performance was deficient because he failed to move to suppress evidence obtained as a result of Officer Manion's warrantless entry into his home. Manion entered the home after placing defendant in handcuffs and before locating his wife. Manion testified to his observation of blood in the master bedroom and photographs of the bedroom were admitted into evidence. Defendant claims that a warrantless entry was not justified because there were no exigent circumstances and a protective sweep was not warranted.

Under the Fourth Amendment, searches and seizure inside a home without a warrant are presumptively unconstitutional. (*Groh v. Ramirez* (2004) 540 U.S. 551, 552.) However, warrantless entries are allowed during exigent circumstances (*Minnesota v. Olson* (1990) 495 U.S. 91, 100), and for purposes of a limited protective sweep (*Maryland v. Buie* (1990) 494 U.S. 325, 335-337). Exigent circumstances are defined as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." (*People v. Ramey* (1976) 16 Cal.3d 263, 276.) When emergency situations arise, "[o]fficers do not need ironclad proof of a 'serious, life-threatening injury to invoke the emergency aid exception." (*Michigan v. Fisher* (2009) 558 U.S. 45, 49.) " '[A]n objectively reasonable basis for believing' [citation] that 'a person within [the house] is in need of immediate aid' " is sufficient. (*Id.* at p. 47.)

In the present case, defendant's wife had told the police dispatcher that she was hiding in her neighbor's backyard. When police officers arrived at the scene, Officer Manion spotted only the defendant on the porch of his home. The whereabouts of

defendant's wife's was unknown, but the door to the home was open and defendant made an attempt to enter. Under the circumstances it was eminently reasonable, and responsive to the 9-1-1 emergency call for assistance, for the officer to determine whether the wife had returned to her home and was in immediate need of aid. Because a motion to suppress evidence of what was observed inside the home was doomed to fail (e.g., *Michigan v. Fisher, supra,* 558 U.S. 45), the attorney's failure to bring such a motion was neither a deficiency nor prejudicial.

    c. *Failure to object to the wife's statements to the 9-1-1 dispatcher and to the paramedic.*

Lastly, defendant argues that his lawyer provided ineffective assistance in failing to object to the admission of the statements made by his wife in her 9-1-1call for help and to the attending paramedic, on the ground that these hearsay statements were testimonial and their admission violated his Sixth Amendment right to confrontation. (*Crawford v. Washington* (2004) 541 U.S. 36.) Defendant asserts that by the time his wife made the 9-1-1 call, the emergency had already ended, so that the operator's line of questioning ("what's going on?") had evolved into an interrogation in which she told the authorities that "her husband" "had beat [her] and kicked [her]." Likewise, defendant asserts that by the time the paramedic arrived the emergency was no longer in progress, so that when the paramedic asked his wife "if she was struck with any weapons or how she was struck," her response "that she had been kicked multiple times and all over her body" was testimonial in nature.

Defendant relies on *Davis v. Washington* (2006) 547 U.S. 813, 822 to support his argument that statements become testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." However, "a 911 call, and at least the initial questioning by the operator, are not primarily designed to prove some past fact, but to elicit current circumstances requiring police assistance." (*People v. Cage* (2007) 40 Cal.4th 965, 982.) Here, after the wife told the 9-1-1 dispatcher "I need help please," the dispatcher asked "what's going

9

on" in order to determine if police assistance was needed. [3] Likewise, the paramedic was eliciting information in order to determine appropriate medical treatment. At trial, the paramedic explained that it is general procedure to ask trauma patients a series of questions to ascertain if they are alert and oriented. One of those questions is "if they know what happened to them." The purpose of these questions is to "make sure that when they answer questions what they are saying is going to make sense." If the responses do not make sense, the paramedics "wouldn't take what they are saying" and instead "go by what [they] see." Additionally, these questions help paramedics "find out where the injures could be, and pretty much line up for the hospital so they can know what to expect, what areas to look at." Thus, these questions and the wife's answers were made primarily to deal with an ongoing emergency situation. The statements were not elicited to establish facts for use in a later criminal prosecution, and their admission was not a violation of defendant's Sixth Amendment rights as construed in *Crawford v. Washington, supra,* 541 U.S. 36 and its progeny.

Deference is ordinarily due to tactical decisions by defense counsel, including particularly decisions on whether to object to the introduction of evidence. This decision is inherently tactical and seldom establishes a counsel's incompetence. (*People v. Roberts* (2011) 195 Cal.App.4th 1106; see generally, *Douglas v. Woodford* (2003) 316 F.3d 1079.) In the present case, the failure to raise this meritless objection clearly was neither deficient nor prejudicial.

### Disposition

The judgment is affirmed.

---

[3] After being asked "what's going on," the wife responded "I'm hiding in a neighbor's backyard. My husband beat me and kicked me and . . . ." The dispatcher asked a few additional questions, including the wife's address, which yard she was hiding in, whether her husband had any weapons, and how long ago this had happened. In response to the last question, the wife responded, "He hit me with his hands about 45 minutes or an hour ago and I just was able to slip away." The dispatcher continued by asking whether the wife needed an ambulance, what kind of injuries she had, her age, and her husband's name and date of birth. The dispatcher then transferred the call "to Medics" without asking anything further about the details of the assault.

                                             _____

                                             Pollak, J.

We concur:


_____

McGuiness, P. J.


_____

Jenkins, J.