RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0260p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MICHAEL HOOVER,

                         *Plaintiff-Appellee*,

       *v*.

JUSTIN DUE,

                         *Defendant-Appellant*.

> No. 24-5666

─────────────────

Appeal from the United States District Court for the Middle District of Tennessee at Cookeville.
No. 2:22-cv-00051—Waverly D. Crenshaw, Jr., District Judge.

Argued:  April 30, 2025

Decided and Filed:  September 17, 2025

Before:  GIBBONS, WHITE, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Benjamin K. Lauderback, WATSON, ROACH, BATSON & LAUDERBACK, P.L.C., Knoxville, Tennessee, for Appellant.  Benjamin K. Raybin, RAYBIN & WEISSMAN, P.C., Nashville, Tennessee, for Appellee.  **ON BRIEF:**  Benjamin K. Lauderback, WATSON, ROACH, BATSON & LAUDERBACK, P.L.C., Knoxville, Tennessee, for Appellant.  Benjamin K. Raybin, RAYBIN & WEISSMAN, P.C., Nashville, Tennessee, for Appellee.

     GIBBONS, J., delivered the opinion of the court in which WHITE and MURPHY, JJ., concurred.  MURPHY, J. (pp. 18–24), delivered a separate concurring opinion.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.  Defendant Deputy Justin Due received a 911 dispatch call, reporting a domestic dispute at Plaintiff Michael Hoover's house.  The 911 caller stated that Hoover had threatened her with a gun.  When Due arrived at the scene, a woman approached him and said that Hoover had "gone crazy" and "there he is at the door," referring to Hoover standing in the garage doorway.  As Due neared the garage, a second woman walked out into the driveway, recording the event on her phone, while a third woman stood inside the garage, tending to a small child.

Due ordered Hoover to show him his hands.  Although Hoover raised his hands, Due took out his gun and walked into the garage.  When Hoover refused to be handcuffed, Due pushed Hoover back into his house, slammed him against a wall, and punched him in the face.  Due continued to shove Hoover until one of the women at the scene told Due that Hoover had never threatened anyone with a gun.

Hoover filed this suit under 42 U.S.C. § 1983, alleging that Due violated his Fourth Amendment rights when he unlawfully entered his home and used excessive force against him.  The district court denied summary judgment to Due on both claims.  Due appeals, arguing that he is entitled to qualified immunity.  Because a reasonable juror could conclude that Due's warrantless entry into Hoover's home was unlawful, and that his use of force to effectuate that entry was unreasonable, we affirm.

I.

On the evening of October 31, 2021, Deputy Due received a dispatch call, informing him of a "domestic in progress" at Hoover's residence.  DE 59-10, Dispatch Audio, 0:10–18.  According to the dispatcher, the caller reported that Hoover "grabbed [her] by the neck."  *Id.* at 0:18–19.  Due and another deputy responded that they were on the way.  The dispatcher warned the deputies that there were "weapons on scene" and that the caller said that "the male threatened her with a gun."  *Id.* at 0:50–57.

Due was the first officer to arrive at the residence.  The only information that Due had when he arrived at Hoover's residence was the information relayed to him by the dispatch operator.

Due parked his car in the driveway and was immediately met by a woman, later identified as Ashley Kinnett.  Kinnett told Due that "he's gone crazy" and "there he is at the door," referring to Hoover standing in the threshold of the garage.  DE 59-23, Due Dep., Page ID 383; DE 59-6, Video Footage, 8:02–04.  Around the same time, Hoover's wife walked out of the garage while her mother remained inside the garage, tending to a small child.

Due then walked toward the open garage and ordered Hoover to show him his hands.  Hoover raised both of his hands.  Due withdrew his firearm and motioned for Hoover to come off the steps and into the garage.  Hoover kept his hands raised but remained in the doorway.  Because of Hoover's position, Due could not see inside the house.

Hoover complained, "I've not done anything wrong" and asked, "Why are you getting aggressive?"  DE 59-6, Video Footage, 8:11–15.  As Due walked further inside the garage, he responded, "Well, she's saying you pulled a gun out on her."  *Id.* at 8:15–18.  Hoover responded, "Okay, so you're taking her word over anything else?"  *Id.* at 8:17–18.  "Until I get things secured, yes I am," Due said.  *Id.* at 8:18–19.  Hoover pulled up his shirt a few inches above his beltline and spun around:  "Okay, look.  Nothing on me.  Look.  At all."  *Id.* at 8:19–21.

Due instructed Hoover to put his hands behind his back.  When Due reached out to grab Hoover's right wrist, Hoover backed into his house, and insisted "you ain't handcuffing me in my house."  *Id.* at 8:23–26.  Due responded, "yeah I am," and followed Hoover inside his house.  *Id.* at 8:26–28.  Due then placed his right hand under Hoover's arm, hoping to turn Hoover around.  As Due reached for Hoover's arm, Hoover cinched his left arm around Due's right arm at the elbow, placing Due in a brief armlock.  From this position, Hoover pulled his arms up, breaking free of Due's hold.

Due then leaned back and swung his fist, punching Hoover in the face.  Due ordered Hoover to "get on the ground," but Hoover resisted, pushing Due away.  *Id.* at 8:35–37.  The scuffling continued for a few more seconds until one of the women at the scene informed Due

that Hoover never pulled a gun.  Due immediately backed off and stopped trying to arrest Hoover.

About a year later, Hoover sued Due under § 1983, asserting claims for unlawful entry and excessive force.[1]  Both parties moved for summary judgment.  Apart from one claim, the district court denied both motions in their entirety.[2]  Due appeals the district court's denial of summary judgment on Hoover's unlawful entry and excessive force claims.

## II.

In appealing the district court's denial of summary judgment, Due argues that he is entitled to qualified immunity on Hoover's unlawful entry and excessive force claims.  This court reviews a denial of qualified immunity at the summary judgment stage de novo.  *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013).  Summary judgment is proper when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Courts consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52.

## III.

Before reaching the merits, this court must ensure it has jurisdiction over Due's interlocutory appeal.  In general, this court's jurisdiction is limited to reviewing "final decisions of the district courts."  28 U.S.C. § 1291.  The phrase "final decisions" generally includes only those that end the litigation.  *See Hall v. Hall*, 584 U.S. 59, 64 (2018).  But even some decisions that do not end the litigation may be sufficiently "final" for purposes of § 1291.  *See DeCrane v. Eckart*, 12 F.4th 586, 601 (6th Cir. 2021).  An order denying qualified immunity is one such decision.  *See Mitchell v. Forsyth*, 472 U.S. 511, 524–30 (1985).

---

[1]Hoover also sued Putnam County, Tennessee, but later dismissed his claims against the county.

[2]The district court granted summary judgment to Due on Hoover's malicious prosecution claim. Hoover did not appeal that ruling and it is not at issue in this appeal.

In reviewing a denial of qualified immunity, our jurisdiction extends to issues of law, not fact. *Kent v. Oakland Cnty.*, 810 F.3d 384, 389 (6th Cir. 2016). Because our jurisdiction in an interlocutory appeal is limited to legal issues, the defendant must "concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Johnson v. City of Saginaw*, 980 F.3d 497, 505–06 (6th Cir. 2020) (citation omitted).

Hoover argues that Due failed to concede several disputed facts, depriving this court of jurisdiction. First, Hoover argues that Due failed to concede that he did not know whether the alleged victim or suspect was present before entering Hoover's garage. In his brief, Due argues that he "knew the accused was standing before him, 'Mike Hoover,' and the victim who came to him when he arrived had just described [Hoover] as having 'gone crazy' and 'there he is at the door.'" CA6 R. 14, Appellant Br., at 34–35; *see id.* at 29 ("As soon as he arrived on scene that same caller met [Due] and her description of [Hoover's] mental state and location supported what [Due] had previously been told by his dispatchers."). According to Hoover, Due relies on this version of facts to argue that exigent circumstances existed when he entered Hoover's garage.

The district court, considering the facts in the light most favorable to Hoover, found that "Due never confirmed the information the 911 operator provided, specifically, who was the homeowner; who was the 911 caller; who had been threatened; and who, allegedly, had a firearm." DE 91, District Ct. Op., Page ID 829. Thus, a factual dispute exists regarding whether Due knew the alleged victim's or suspect's identities.

But although Due did not concede this fact for purposes of his interlocutory appeal, this fact is not "crucial" to the appeal. *Adams v. Blount Cnty.*, 946 F.3d 940, 951 (6th Cir. 2020) (citation omitted). Determining whether exigent circumstances existed "does not depend on the officers' subjective intent." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam). It depends on whether the officer had "an objectively reasonable basis for believing" that someone inside the house was "in need of immediate aid." *Id.* (citations omitted). Because Due's subjective intent is irrelevant to whether exigent circumstances existed, Due's failure to concede this fact does not divest this court of jurisdiction. *See Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598,

602 n.5 (6th Cir. 2005) (exercising jurisdiction over interlocutory appeal when defendant did not concede plaintiff's version of the facts because the factual disputes were "minor").

Hoover next argues that Due failed to concede that Hoover's hands were raised when Due entered the garage and before he initiated force against Hoover. Reviewing the video footage, the district court found that it "appears to show—though does not definitively establish—that Hoover held up his hands just before Due entered the garage." DE 91, District Ct. Op., Page ID 835. The district court did not, however, address whether the footage showed that Hoover's hands were up before Due initiated force because it found that Due forfeited any argument that he was entitled to summary judgment if his entry was unlawful.

Due, for his part, does not address these facts in his initial brief. And for good reason: the video footage confirms that Hoover had his hands up for at least a moment before Due entered the garage and before he initiated force. Because these facts are not actually in dispute, we need not review them. *See Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (en banc); *Campbell v. Cheatham Cnty. Sheriff's Dep't*, 47 F.4th 468, 475 (6th Cir. 2022) ("Where there is video footage of an incident, we view the facts in the light depicted by any unambiguous footage.").

Lastly, Hoover argues that Due failed to concede that Hoover did not engage in active resistance. In his brief, Due alleges that Hoover used a "provocative level of force" when he pulled his hand away from Due and backed into his house. CA6 R. 14, Appellant Br., at 45. Due also describes the brief armlock Hoover executed on him as an "assault." *Id.* Hoover contests these facts and insists that he used passive resistance. Because Hoover's version of the events is not blatantly contradicted by the record, Due's fact-based argument is not appropriate for resolution on an interlocutory appeal.

Yet our precedents permit us to review Due's other arguments, which present "a series of strictly legal questions." *See Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002). For instance, did Due enter Hoover's home under exigent circumstances, making it lawful even in the absence of a warrant? *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). We have repeatedly evaluated whether a reasonable jury could find these exigent circumstances at this interlocutory stage. *See,*

*e.g.*, *Reed v. Campbell Cnty.*, 80 F.4th 734, 742–43 (6th Cir. 2023); *Williams v. Maurer*, 9 F.4th 416, 427 (6th Cir. 2021).  Next, did Due use excessive force against Hoover when he pointed his gun at Hoover as he entered the garage?  *See Wright v. City of Euclid*, 962 F.3d 852, 870 (6th Cir. 2020).  And did Due use excessive force against Hoover when he grabbed his hand, pushed him against the wall, or punched him the face?  *See Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 607 (6th Cir. 2006).  Finally, did Due's alleged actions violate "clearly established" law? *See Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).  Because these are precisely the type of questions that may be raised by interlocutory appeal, this court has jurisdiction over Due's appeal.  *See Phelps*, 286 F.3d at 298–99; *see also Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

## IV.

Qualified immunity shields public officials, like Due, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To overcome Due's qualified immunity defense, Hoover must establish that (1) Due violated his federal statutory or constitutional right, and (2) the unlawfulness of Due's conduct was clearly established at the time of the violation. *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018).

## A.

Hoover claims that Due unlawfully entered his home when he entered his garage without a warrant.  Due seeks to justify his warrantless entry by arguing that exigent circumstances existed because he was responding to a 911 call reporting a domestic assault and that a man had threatened to use a gun against the caller.  The district court determined that there was an issue of material fact as to whether exigent circumstances existed and denied Due summary judgment on the claim.

*Constitutional violation.*  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."  U.S.

Const. amend. IV. At its core, the Fourth Amendment protects the right of an individual to "retreat into his own home and there be free from unreasonable governmental intrusion." *Payton v. New York*, 445 U.S. 573, 589–90 (1980) (citation omitted). It is therefore "a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* at 586 (citation omitted); *see also Fisher*, 558 U.S. at 47.

It is undisputed that Due entered Hoover's home without a warrant. Due argues, however, that there was an exigency because Hoover might have pulled a gun on one of the women. The need to assist others who are seriously injured or threatened with such injury is an exigent circumstance. *See Brigham*, 547 U.S. at 403. Although officers do not need "ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception," *Gradisher v. City of Akron*, 794 F.3d 574, 584 (6th Cir. 2015) (citation omitted), they must have an "objectively reasonable basis for believing" that someone inside the house needs immediate aid, *Fisher*, 558 U.S. at 47 (citation omitted). Taking the facts in the light most favorable to Hoover, a reasonable jury could conclude that Due lacked an objectively reasonable basis for believing that someone inside Hoover's home was injured or at risk of immediate danger.

Before Due arrived at the scene, Due learned from dispatch that there was a "domestic in progress" at Hoover's residence. DE 59-10, Dispatch Audio, 0:10–18. According to the dispatcher, the caller alleged that "Mike Hoover grabbed the caller by the neck" and had threatened her with a gun. *Id.* at 0:10–20, 0:52–57. A 911 call, vaguely reporting an altercation, is not enough to justify an officer's warrantless entry into a home. *Reed*, 80 F.4th at 744. An officer needs "*something* beyond the present 911 call—whether or not the phone call is anonymous." *Id.* at 745.

Due emphasizes that when he arrived at the scene, he was immediately met by a woman who said, "he's gone crazy" and "there he is at the door," referring to Hoover standing in the doorway of the garage. DE 59-23, Due Dep., Page ID 383; DE 59-6, Video Footage, 8:02–04. Due argues that the woman's statements at the scene, combined with the 911 call, were enough to justify his warrantless entry. But in determining whether exigent circumstances existed, we must look to the "totality of circumstances," and several other circumstances that evening dispel the existence of an exigency. *Missouri v. McNeely*, 569 U.S. 141, 149 (2013).

First, when Due arrived at the scene, he was met by three women and a small child; none appeared injured or in need of immediate aid.  The first woman (Kinnett) spoke with Hoover outside the garage; moments later, a second woman (Chelsea Hoover) walked out of the open garage while she recorded the events on her phone; and a third woman (Chelsea's mom) stood inside the garage, tending to a small child.  None of the potential victims that Due encountered at the scene appeared injured.  *Cf. Brigham*, 547 U.S. at 401 ("The officer testified that he observed the victim of the blow spitting blood into a nearby sink."); *Thacker v. City of Columbus*, 328 F.3d 244, 249 (6th Cir. 2003) ("When the front door was opened, the officers noticed that . . . [plaintiff's] hand was bleeding profusely, and he was bloodied.").

Second, before Due entered the garage, Hoover was fully visible and cooperative.  As Due neared the garage, he commands Hoover to "show me your hands."  DE 59-6, Video, 8:03–06.  The video then turns to Hoover who is standing in the garage doorway.  Hoover raises his hands.  Due then enters the frame as he walks through the garage toward Hoover.  Although it is not entirely clear from the video, a reasonable jury could conclude that Hoover had his hands up before Due entered the garage.  Hoover's compliance and non-threatening behavior therefore undermines the existence of exigent circumstances.  *Cf. Schreiber v. Moe*, 596 F.3d 323, 330 (6th Cir. 2010) (finding exigent circumstances where plaintiff "abruptly told [the officer] to leave and bombarded him with a slew of profanities"); *Thacker*, 328 F.3d at 254 (finding exigent circumstances where plaintiff "appeared intoxicated" and "acted belligerently and used profanity").

Third, there were no signs that someone *inside* the house was injured or in need of immediate care.  *See Brigham*, 547 U.S. at 405.  Soon after Due arrived, a woman met him in the driveway, outside the garage.  A second woman then walked out of the garage to meet the two in the driveway while a third woman appeared inside the garage with a small child.  None of the women were inside the house and although one was inside the garage, she did not appear injured and was taking care of a small child.  Nor did any of the women at the scene inform Due that there was someone inside the house who was injured or in need of immediate aid.

This court's cases that Due relies on—*Johnson v. City of Memphis*, *Schreiber v. Moe*, and *Thacker v. City of Columbus*—confirm the lack of exigency here.  In each case, the officers were

presented with several corroborating circumstances—the sound of shouting, an open door, a visibly injured occupant, and more—that justified their warrantless entry. None of these circumstances existed here.

In *Johnson v. City of Memphis*, dispatch reported a 911 hang up call, a call that occurs when the caller dials 9-1-1, hangs up before speaking with the operator, and does not pick up the return call. 617 F.3d 866 & n.1 (6th Cir. 2010). When the officer arrived, the front door of the house was wide open. *Id.* at 866. The officer announced that the police were present. *Id.* After receiving no response, the officer entered. *Id.* We held that "the combination of a 911 hang call, an unanswered return call, and an open door with no response from within the residence" was enough to establish exigent circumstances. *Id.* at 869.

In doing so, we placed significant weight on the nature of a 911 hang up call. Such calls, we said, "inform the police that someone physically dialed 9-1-1, the dedicated emergency number, and either hung up or was disconnected before he or she could speak to the operator." *Id.* at 871. When the caller does not answer the return call, there is a "probability, perhaps a high probability, that after the initial call was placed the caller or the phone has somehow been incapacitated." *Id.* The officer's fear was corroborated when he saw the front door wide open and received no response from inside. *See id.* at 870–71.

This case is nothing like *Johnson*. For one, it does not involve a 911 hang up call. The 911 call here did require urgency: according to the dispatcher, the caller reported a domestic assault and said that a man had threatened to shoot her. But when Due arrived at the scene, the concern raised by the 911 call—that a man was about to shoot someone in the house—was not corroborated. Due immediately found the apparent 911 caller (Kinnett) outside the house and the suspect standing in the garage doorway with his hands up.

In *Schreiber v. Moe*, an anonymous 911 caller reported hearing yelling and believed that a girl was "getting beat" by her parents. 596 F.3d at 326 (citation omitted). When the officer arrived, he heard "an angry male voice yelling profanities." *Id.* The officer knocked on the door, and a young boy answered. *Id.* The officer then saw a man yelling at someone within the

home.  *Id.*  The girl was visibly upset—she was crying, her face was red, and she was "hurt."[3] *Id.* at 330 (citation omitted).

The officer said that he was concerned about the girl's welfare, in response to which the father "abruptly told [the officer] to leave and bombarded him with a slew of profanities."  *Id.* We held that the officer had an objectively reasonable basis for believing that the girl was at risk of imminent injury.  *Id.* at 331.  The officer "knew that a 911 caller who had recently spoken with [the girl] thought she was being beaten, and, upon investigation, [the officer] discovered an irate father so lacking in self-control that he shouted profanities at an officer who was simply checking on her welfare."  *Id.*

Unlike the officer in *Schreiber*, when Due arrived, he did not hear a male voice shouting from within the house; he did not observe a man yelling at someone inside the house or have any reason to believe that someone inside the house needed immediate aid; and he did not encounter a "hostile" or "uncooperative" suspect.  *Id.* at 330.  To the contrary, upon Due's arrival, there was no shouting; the potential victim (Kinnett) was outside the house, away from the suspect, and without injury; and the suspect immediately presented himself and raised his hands.

In *Thacker v. City of Columbus*, a 911 caller reported a "cutting or stabbing" at an apartment.  328 F.3d at 249.  When officers arrived and knocked on the apartment door, a shirtless, bloody, and intoxicated man opened the door.  *Id.* at 249, 254.  Looking inside the apartment, the officers saw "broken glass on the kitchen floor and an indentation in one wall with a liquid stain beneath it."  *Id.* at 249.  The man was "bleeding profusely" from a cut on his hand and had blood on his legs and boxer shorts.  *Id.* at 249.  He was also "[v]isibly intoxicated and immediately belligerent" and, rather than explain the cause of his injury, "used profanity as he spoke with the officers."  *Id.* at 249.  We held that "the uncertainty of the situation, in particular, of the nature of the emergency, and the dual needs of safeguarding the paramedics while tending to Thacker's injury" justified the officers' entry into the apartment.  *Id.* at 254.

---

[3]The parties in *Schreiber* disputed whether the officer could see the girl inside the house before he entered. *See* 596 F.3d at 326.  While the officer testified that he could not see the girl, Schreiber claimed that the officer could see the girl, but that she was visibly upset.  *See id*. at 326, 330.  We held that under either version, the officer's entry would have been justified.  *Id.* at 330–31.

When Due arrived, no one was visibly injured or in need of immediate aid. Although Due could not see inside the house, the open garage did not appear in disarray; there was no broken glass or punched-in hole in the wall. No one was visibly intoxicated or acted belligerent, and no one used profanity before Due entered the garage. And because no one was injured and there were no paramedics at the scene, Due did not face "the dual needs of safeguarding the paramedics while tending to [the victim's] injury." DE 59-6, Video Footage, 8:00-9:25.

It is true that, as Due points out, the 911 dispatch call here reported that a man had threatened the caller with a gun and that weapons might be present at the scene. This court has made clear, however, that "[t]he mere presence of firearms does not create exigent circumstances." *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 562 (6th Cir. 2018) (alteration in original) (citation omitted); *see Barton v. Martin*, 949 F.3d 938, 948 (6th Cir. 2020) ("Evidence that firearms are within a residence, by itself, is not sufficient to create an exigency." (citation omitted)). Rather, the officers must have "possessed information that the suspect was armed and likely to use a weapon or become violent." *United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996).

Due might have reasonably concluded that given the 911 dispatch call, along with Kinnett's statement that Hoover had "gone crazy," Hoover was armed. But no facts suggested that Hoover was "likely to use a weapon or become violent." *Id.* Due did not observe Hoover with a weapon. *Cf. United States v. Morgan*, 743 F.2d 1158, 1163–64 (6th Cir. 1984) (holding that no exigency existed even where officers saw the suspect holding a gun before making a warrantless entry). Nor did he have any reason to suspect that someone inside the house was in peril. *Cf. Causey v. City of Bay City*, 442 F.3d 524, 529–31 (6th Cir. 2006) (holding that exigent circumstances existed when officers relied on information that gunshots were fired from the residence, no one had left or entered since the gunshots, and no one answered the door). The apparent victim and target of Hoover's threats (Kinnett) was outside the house and appeared uninjured. As Due began to approach the garage, Hoover presented himself and raised his hands, indicating that he was not holding a gun. A reasonable jury, considering the evidence in the light most favorable to Hoover, could conclude that Hoover was unlikely to use his gun or become violent and, as a result, no exigency existed. *See O'Brien v. City of Grand Rapids*, 23 F.3d 990,

997–98 (6th Cir. 1994) (concluding that no exigency existed when the armed suspect retreated to his home and did not make any verbal threats toward the officers or point his gun at anyone outside the home).

Due claims it was objectively reasonable for him to believe that Hoover posed an immediate threat because Hoover could still grab a gun from his back pocket or one of his boots. A reasonable jury could conclude that was pure speculation based on no more than a "hunch." *Gradisher*, 794 F.3d at 584 (citation omitted). Within seconds after Due arrived, Hoover stepped out to the garage doorway, making himself fully visible to Due. Hoover then raised both of his hands, indicating that he did not have a gun. Although it is possible that Hoover could have been concealing a firearm in his back pocket or in his boots, "generic possibilities of danger cannot overcome the required particularized showing of a risk of immediate harm." *Morgan*, 903 F.3d at 562.

Considering the lack of evidence corroborating the 911 report, a reasonable jury could conclude that Due did not have a reasonable basis for believing that there was someone inside Hoover's home who needed immediate aid. The district court did not err in concluding that Due's warrantless intrusion violated Hoover's constitutional rights.

*Clearly established law.* To satisfy the second prong of the qualified immunity analysis, Hoover must show that Due's unconstitutional conduct violated clearly established law. *See Williams v. Mauer*, 9 F.4th 416, 437 (6th Cir. 2021). A right is clearly established when, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 583 U.S. at 63 (citation modified). Although our caselaw must give a reasonable officer fair warning that the conduct at issue was unconstitutional, *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), it need not present "the exact same fact pattern, or even 'fundamentally similar' or 'materially similar' facts." *Brown v. Chapman*, 814 F.3d 447, 461 (6th Cir. 2016) (citation omitted).

The right to be free from a warrantless entry into a home without an exception to the warrant requirement is clearly established. *Williams*, 9 F.4th at 437–38; *Barton*, 949 F.3d at 949; *see Coffey v. Carroll*, 933 F.3d 577, 587 (6th Cir. 2019) ("If the issues of fact are ultimately

resolved in Coffey's favor, the officers violated the clearly established constitutional prohibition against unlawful entry."). Because "warrantless entries based on the emergency aid exception require both the potential for injury to the officers or others and the need for swift action," we have held that the "right to be free from warrantless search under this exception absent these factors is clearly established." *Goodwin v. City of Painesville*, 781 F.3d 314, 332 (6th Cir. 2015).

As discussed, a reasonable jury could conclude that there were no exigent circumstances when Due made a warrantless entry into Hoover's home. If the jury concludes that there were no exigent circumstances, then, as in *Williams* and *Barton*, Due's warrantless entry into Hoover's home violated the clearly established constitutional prohibition against unlawful entry. Thus, the district court did not err in denying Due's motion for summary judgment on the warrantless entry claim.

Due argues that the district court did not define the constitutional right with sufficient particularity for qualified immunity purposes. In deciding whether a right has been clearly established, we must take care not to define the right at "a high level of generality." *Al-Kidd*, 563 U.S. at 742. For example, the "general proposition" that the Fourth Amendment prohibits unreasonable search and seizures "is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.*; *see Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508 (6th Cir. 2012) (rejecting plaintiff's "lofty definition" of the clearly established right).

But in determining whether Due violated clearly established law, the district court did not rely on the Fourth Amendment's prohibition against unreasonable searches. The district court instead relied on this court's decisions holding that an offer cannot make a warrantless entry into a home without an exception to the warrant requirement. Existing precedent placed the constitutional question here—whether an officer can make a warrantless entry into a home without an exception to the warrant requirement—"beyond debate." *Al-Kidd*, 563 U.S. at 741; *see Williams*, 9 F.4th at 437–38; *Barton*, 949 F.3d at 949; *Coffey*, 933 F.3d at 587.

It is true that, on other occasions, this court has defined the constitutional right more particularly. For example, in *Gradisher*, we rejected the plaintiff's framing of the constitutional right as the "right to be free from warrantless forced entry absent exigent circumstances." 794 F.3d at 584. The relevant inquiry, we said, was whether "it was clearly established that no exigent circumstance exists when officers enter a residence in response to multiple erratic 911 calls from there and when they believe that someone inside may have threatened the use of a gun." *Id.* We held that the law was not clearly established when "no law confirm[ed] that the officers . . . were clearly wrong for deciding to enter on those bases." *Id.* at 585. And in *Dickerson v. McClellan*, we reasoned that "[e]ven if the officers' belief that someone within [a residence] could be in danger is a close question, the officers are entitled to the benefit of the doubt under the qualified immunity standard." 101 F.3d 1151, 1160 (6th Cir. 1996).

But even if it were necessary to define the right with greater particularity, Due's conduct would still violate clearly established law. This court might ask, for example, whether it was clearly established as of October 31, 2021, that no exigent circumstances exist when an officer enters a residence in response to a 911 call alleging that the occupant threatened to use deadly force when the apparent victim is no longer inside the house.

We addressed that particular fact pattern in *Goodwin v. City of Painesville*, 781 F.3d 314 (6th Cir. 2015). There, officers received a dispatch call reporting a possible "disturbance outside, possibly a fight." *Id.* at 318. When they arrived, they heard "yelling coming from within" the apartment. *Id.* A female occupant told the officers that they would "try to keep it down," but the male occupant "acted agitated by the officers' presence at the door." *Id.* The officers then spoke with a woman outside the apartment who told them that the male occupant was "'crazy,' had ripped her necklace off, and had said he was going to kill everyone in the apartment and the police." *Id.* at 319. Later that night, the officers approached the apartment again and asked the male occupant to step outside, but he refused. *Id.* The officers then kicked down the front door and entered. *Id.*

This court held that the officers' entry was not justified under the emergency aid exception to the warrant requirement. *Id.* at 332. A reasonable jury could conclude that the officers lacked an objectively reasonable belief that someone inside the apartment needed

immediate aid based on the dispatch call and the woman's statement about the male occupant's "violent and threatening behavior." *Id.*  When the officers entered the apartment, the woman "herself had already left, [the] other guests were in the living room of the apartment, and [] there was no indication that they needed any immediate assistance from the officers." *Id.*

Like the officers in *Goodwin*, Due received a report that a male occupant had been violent and threatening, but when he entered the home, the apparent victim was no longer inside, and no signs indicated that someone inside the house needed immediate aid.  Indeed, the facts of this case present less of a risk of harm as Due did not hear yelling inside the garage or house and Hoover initially complied with Due's demands after Due arrived outside his garage.  *Cf. id.* at 319.  The lack of exigent circumstances under these particular circumstances was therefore clearly established.  Thus, we affirm the district court's denial of summary judgment to Due on Hoover's unlawful entry claim.

B.

Hoover also alleges that Due used excessive force.  He identifies five instances when Due allegedly used excessive force.  According to Hoover, Due used excessive force when he: (1) pointed his firearm at Hoover as Due entered the garage; (2) grabbed Hoover's right hand as he stood in the doorway; (3) pushed Hoover backwards into the hallway and against the wall; (4) punched Hoover in the face; and (5) continued to push and grab Hoover after punching him.

The district court concluded that because a reasonable juror could find that no exigent circumstances existed, a reasonable juror could also find that any subsequent force used was excessive and violated clearly established law.  To be sure, some of our cases have held that when an officer enters a home "with neither a warrant nor an exception to the warrant requirement, the use of any amount of force to effectuate this unconstitutional action constitute[s] unreasonable 'gratuitous violence.'"  *Williams*, 9 F.4th at 440 (citation omitted); *see Reed*, 80 F.4th at 749-50.  But this does not mean that all force used after an unlawful entry is excessive.  The Supreme Court has rejected such a categorical approach, instructing courts to analyze excessive force claims independently.  *See County of Los Angeles v. Mendez*, 581 U.S. 420, 428–29 (2017).  Whether evaluating an officer's use of force before he makes an unlawful

entry or after, the inquiry is the same: we assess the use of force from the perspective of a reasonable officer, considering the totality of the circumstances, including (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officers or others;" and (3) whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

But although a prior Fourth Amendment violation does not automatically render an officer's use of force unreasonable, our caselaw nevertheless holds that force used to "effectuate" an unlawful entry is unreasonable. *Williams*, 9 F.4th at 440; *see Reed*, 80 F.4th at 750. The issue under our precedent, then, is whether any of Due's force was used to effectuate his unlawful entry into Hoover's residence. We ultimately need not decide that issue because Due failed to argue before the district court[4] or this court[5] that even if his entry was unlawful, his use of force was still reasonable—either because it was not used to "effectuate" his entry or because it was otherwise justified. *Williams*, 9 F.4th at 440. Because Due made no effort to develop this argument, he has forfeited the issue on appeal. *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 843 (6th Cir.), *cert. denied*, 144 S. Ct. 2689 (2024). We thus affirm the district court's denial of summary judgment to Due on Hoover's excessive force claim.

V.

For the foregoing reasons, we affirm the district court's decision denying summary judgment to Due on the unlawful entry and excessive force claims.

---

[4]The district court concluded that this issue was "waived":

Due's papers do not contemplate, even *arguendo*, that a reasonable jury could find that he unlawfully entered Hoover's home. Because Due offers no argument that he is still entitled to summary judgment on Hoover's excessive force claims if the Court concluded otherwise, and the Court can consider any argument to that effect waived.

DE 91, District Ct. Op., Page ID 840 (citations omitted).

[5]Although Due addresses his various uses of force, his arguments are predicated on his lawful entry.

—————————

**CONCURRENCE**

—————————

MURPHY, Circuit Judge, concurring. Before Officer Justin Due arrived at Michael Hoover's home, he received information that Hoover had grabbed a 911 caller by the neck and threated her with a gun. When Due arrived there, a woman approached him, said that Hoover had "gone crazy," and pointed through an open garage door at Hoover—who stood in the doorway connecting the house to the garage. Due quickly entered the garage to handcuff Hoover and get control of a domestic dispute of unknown volatility. We must consider whether the facts that Due encountered created the "exigent circumstances" that would allow him to enter the home without a search warrant under the Fourth Amendment. *Lange v. California*, 594 U.S. 295, 301 (2021). Our precedent gives this exigent-circumstances question to the jury whenever reasonable minds could differ on the answer. And as Judge Gibbons explains well for the majority, a reasonable jury could find that Due lacked the required exigency. But I write to explain why our cases may be wrong in treating exigent circumstances as a question of fact rather than law.

As a refresher, cases generally contain three types of questions. They contain purely factual questions: What happened in the real world independent of the law? They contain purely legal questions: What do the words of a constitutional or statutory provision mean independent of the facts? And they contain "mixed" questions: Do a case's historical facts (found by a jury or assumed in the nonmovant's favor on summary judgment) meet a law's legal elements (determined by a court)? *See U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 393–96 (2018).

Our standards of review differ for these three questions. Appellate courts generally review a factfinder's posttrial findings about the historical facts with deference. *See id.* at 394. And we generally resolve all evidentiary disputes about these facts in the light most favorable to the nonmoving party at the pretrial summary-judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). At the same time, appellate courts generally review a lower court's conclusions about the governing law "without the slightest deference." *U.S. Bank*, 583

U.S. at 393. We also may resolve these legal issues de novo even on summary judgment. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995). Lastly, appellate courts take a case-by-case approach to mixed questions. *See U.S. Bank*, 583 U.S. at 395–96. We review these questions with or without deference based on whether a specific question is more like a factual issue or a legal one. *See id.*

This dichotomy shows the analysis to undertake at the summary-judgment stage in this exigent-circumstances case. We must resolve any evidentiary disputes about the historical facts (for example, did Hoover raise his hands before Due entered the garage?) in the light most favorable to Hoover. And we must resolve any purely legal questions (for example, does an officer's safety represent a valid exigent circumstance?) without deference to either party's view.

Those conclusions leave the final mixed question: Do the historical facts on this record (interpreted in Hoover's favor) create the exigent circumstances that allowed Due to enter Hoover's home? Back in 1989, we held that this mixed question presents a factual issue in civil suits filed under 42 U.S.C. § 1983. *See Jones v. Lewis*, 874 F.2d 1125, 1130 (6th Cir. 1989) (per curiam). So rather than answer the question ourselves at the summary-judgment stage, we held that a jury gets to decide it whenever "there is room for a difference of opinion." *Id.* And we have kept to that course over the decades. *See, e.g.*, *Ingram v. City of Columbus*, 185 F.3d 579, 587 (6th Cir. 1999); *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002); *Schreiber v. Moe*, 596 F.3d 323, 330 (6th Cir. 2010); *Carlson v. Fewins*, 801 F.3d 668, 676 (6th Cir. 2015); *Goodwin v. City of Painesville*, 781 F.3d 314, 332 (6th Cir. 2015); *Williams v. Maurer*, 9 F.4th 416, 437 (6th Cir. 2021); *Reed v. Campbell County*, 80 F.4th 734, 743 (6th Cir. 2023).

I am dubious of our approach to this mixed question. Of most note, it conflicts with the Supreme Court's repeated guidance on this topic. As a general matter, the Court has held that we should treat mixed questions in this "constitutional realm" as legal issues that we resolve de novo. *U.S. Bank*, 583 U.S. at 396 n.4. As a specific matter, the Court has repeatedly reiterated this point for the Fourth Amendment. For example, the Court has held that appellate courts should give fresh review to the mixed question of whether the historical facts created the probable cause necessary for a search or seizure. *See Ornelas v. United States*, 517 U.S. 690, 696–97 (1996). And the Court has held that appellate courts should give fresh review to the

mixed question of whether the historical facts showed that an officer used excessive force. *See Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). It has thus resolved this excessive-force question de novo in § 1983 suits. *See id.*; *see also Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014). In sum, while appellate courts must draw "all reasonable factual inferences in favor of" a jury's verdict (after a trial) or the nonmovant (on summary judgment), appellate courts "do not defer to the jury's [or district court's] legal conclusion that those facts violate the Constitution." *Muehler v. Mena*, 544 U.S. 93, 98 n.1 (2005).

I fail to see why the standard of review should be different for the mixed question here: do the historical facts show the exigent circumstances required by the Fourth Amendment for warrantless entries into a home? Indeed, our original opinion on this topic (*Jones*) conceded that courts rather than juries should answer this question in *criminal* cases. 874 F.2d at 1130. Without any reasoning, though, we added that the question should go to the jury in *civil* cases. *Id.* Yet our sole support for this second holding consisted of a string cite to three cases. *Id.* (citing *Llaguno v. Mingey*, 763 F.2d 1560, 1565 (7th Cir. 1985) (en banc); *Hindman v. City of Paris*, 746 F.2d 1063, 1067–68 (5th Cir. 1984); *Giordano v. Lee*, 434 F.2d 1227, 1230 (8th Cir. 1970)).

None of the cited cases supports our continued treatment of this exigent-circumstances question as one of fact. Take the Seventh Circuit's decision in *Llaguno*. There, the court held that civil juries should decide whether probable cause existed. *Llaguno*, 763 F.2d at 1565. It reasoned that this probable-cause question addresses an officer's "reasonableness, which is also the underlying issue in deciding negligence—a classic jury issue." *Id.* Yet the Seventh Circuit has since found that the Supreme Court's later decisions (including *Ornelas*) "superseded" *Llaguno*'s holding that a jury must decide Fourth Amendment questions of reasonableness. *Bell v. Irwin*, 321 F.3d 637, 641 (7th Cir. 2003). That court now reviews these questions "as a matter of law" because "[j]udges rather than juries determine what limits the Constitution places on official conduct." *Id.* Not only that, *Llaguno* conflicts with our own caselaw, which treats probable cause as a question for courts in civil cases. *See Gerics v. Trevino*, 974 F.3d 798, 805–06 (6th Cir. 2020).

Next, *Jones* misread the Fifth Circuit case that it cited. *See Hindman*, 746 F.2d at 1067–68. In *Hindman*, a dispute about the *historical facts* existed over what two officers had "in mind" for statements they put in an affidavit seeking a search and arrest warrant. *Id.* at 1067. The Fifth Circuit held that the jury should decide the disputed facts about the officers' "intent." *Id.* But the court *itself* answered whether the historical facts established probable cause. *See id.* If the jury believed the officers about their intent, the court reasoned, "probable cause" would exist "for the search and arrest." *Id.* If the jury disbelieved the officers, by contrast, probable cause would not exist. *Id.* This reading comports with how the Fifth Circuit treats the probable-cause question today: as a "question of law." *Reitz v. Woods*, 85 F.4th 780, 788 (5th Cir. 2023) (citation omitted); *Grisham v. Valenciano*, 93 F.4th 903, 908 (5th Cir. 2024). Under this view, though, *Jones* should have held that the ultimate exigent-circumstances question likewise represented a question of law.

As for the Eighth Circuit's decision in *Giordano*, it said that "where a genuine issue of fact on the existence of probable cause for arrest is presented, the question should be submitted to the jury." 434 F.2d at 1230. This sentence is ambiguous. What "question" should a court send to the jury? The question about the historical facts over which there is a genuine dispute? Or the mixed question about whether probable cause existed? If the former, the statement represents black-letter law because disputed questions about real-world facts always go to the factfinder. *See Ornelas*, 517 U.S. at 699; *see also Muehler*, 544 U.S. at 98 n.1. If the latter, the statement conflicts with the Eighth Circuit's recent decisions—which (like our opinion in *Gerics*) treat the ultimate probable-cause issue as "an objective question of law." *Est. of Nash v. Folsom*, 92 F.4th 746, 756 (8th Cir. 2024) (citation omitted); *see Just v. City of St. Louis*, 7 F.4th 761, 766–67 (8th Cir. 2021). So I would have adopted the former reading. And again, that reading contradicts *Jones*.

In short, only a single Seventh Circuit decision ever supported our opinion in *Jones*. And the Seventh Circuit overruled that decision back in 2003. The decision also conflicts with our own opinion in *Gerics*. Yet we have kept following *Jones* for decades. As Judge Rogers recognized some 15 years ago, it is well past time to correct this error. *See McKenna v. Edgell*, 617 F.3d 432, 448–50 & n.1 (6th Cir. 2010) (Rogers, J., dissenting).

Indeed, our characterization of exigent circumstances as a fact question has distorted the law in other ways.  Consider how it has affected our qualified-immunity analysis.  To obtain damages against police officers, plaintiffs must show more than a constitutional violation (in this context, a warrantless entry into a home without exigent circumstances).  *See District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018); *see also Lange*, 594 U.S. at 301.  They must also show that the officers violated "clearly established" law.  *Wesby*, 583 U.S. at 63 (citation omitted).  This second requirement seeks to give officers advanced "notice" that they should not have engaged in the challenged conduct.  *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam).  And officers typically lack this notice if plaintiffs identify the legal rule that the officers allegedly violated "at a high level of generality" (such as the rule prohibiting arrests without probable cause).  *Wesby*, 583 U.S. at 63 (quoting *Plumhoff*, 572 U.S. at 779).  Plaintiffs instead must usually recite the legal rule on which they rely with "a high 'degree of specificity.'"  *Id.* (citation omitted).  As a result, this requirement generally requires plaintiffs to identify "a body of relevant case law" with facts like those that an officer faced.  *Rivas-Villegas*, 595 U.S. at 6 (citation omitted).

How do these well-established ground rules apply when we treat exigent circumstances as a fact question?  Recall that we send this question to the jury if "there is room for a difference of opinion" on the answer.  *Goodwin*, 781 F.3d at 332 (quoting *Schreiber*, 596 F.3d at 329–30).  Yet if a reasonable difference of opinion exists over whether officers had exigent circumstances, "existing precedent" could not "have placed [this] . . . constitutional question beyond debate."  *Rivas-Villegas*, 595 U.S. at 6 (citation omitted).  One might think, then, that whenever we find that a reasonable jury could go either way on the existence of exigent circumstances, we would grant the officers qualified immunity for the lack of clearly established law.  *Cf. Gradisher v. City of Akron*, 794 F.3d 574, 583–85 (6th Cir. 2015).

But we have not taken that approach.  Rather, many of our cases find both that a jury should decide whether there were exigent circumstances and that the officers' conduct violated clearly established law.  *See Reed*, 80 F.4th at 744–46; *Williams*, 9 F.4th 416, 437–38; *Goodwin*, 781 F.3d at 332.  These cases reason that our standard of review requires us to accept the version of the facts most favorable to the plaintiffs when deciding whether an officer violated clearly

established law.  *See Williams*, 9 F.4th at 438.  And because we treat exigent circumstances as factual, this standard has led us to *accept as a given* that no exigent circumstances existed.  *Id.*; *see Reed*, 80 F.4th at 746.  That assumption (that there were no exigent circumstances) then has led us to hold that the officers violated the "clearly established" rule that warrantless entries into a home without exigent circumstances violate the Fourth Amendment.  *Reed*, 80 F.4th at 746 (citation omitted).

The problem with this analysis?  The Supreme Court rejected it decades ago in *Anderson v. Creighton*, 483 U.S. 635 (1987).  There, the Eighth Circuit had denied an officer qualified immunity based on the general "right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances[.]"  *Id.* at 640.  The Supreme Court criticized this logic.  *Id.* at 640–41.  The Eighth Circuit had defined the right at too high a "level of generality" by refusing to consider whether the officer could have "reasonably but mistakenly" thought that "exigent circumstances" existed on the historical facts presented.  *Id.*  The Court instead told the Eighth Circuit that it needed to consider *more specifically* whether the law clearly established that the precise "circumstances with which [the officer] was confronted did not constitute . . . exigent circumstances."  *Id.*  So our treatment of exigent circumstances as a fact question has led us down a path that the Supreme Court blocked many years ago.

Yet it is also difficult to identify "clearly established" law with more precision when we treat exigent circumstances as a question of fact.  *Wesby*, 583 U.S. at 63.  Many of our cases do not *establish as a matter of law* that the specific facts showed (or failed to show) exigent circumstances.  Rather, they hold that a jury *could go either way* on this exigent-circumstances question given the "room for a difference of opinion."  *Goodwin*, 781 F.3d at 332 (citation omitted); *see Carlson*, 801 F.3d at 676–77; *Jones*, 874 F.2d at 1130–31.  How are officers supposed to know whether the conduct at issue in these cases was lawful or unlawful?  Should they track down the jury verdicts to see which way the jury resolved the matter?  If the jury finds exigent circumstances, does the verdict create clearly established law for qualified-immunity purposes?  *Cf. Crabbs v. Pitts*, 817 F. App'x 208, 212, 215–16 (6th Cir. 2020).  Or must officers risk a different jury coming out the other way in similar circumstances?  I have no idea.

Where does this law leave things for Hoover's unlawful-entry claim against Due? As I have said, I have found this case a close one. On the one hand, dispatch told Due that Hoover had grabbed a 911 caller by the neck and threatened her with a gun. A woman also approached Due when he arrived at the scene and said that Hoover had "gone crazy." And she identified Hoover as the man standing in the doorway between the garage and home. At this point, Due could have reasonably believed that Hoover had a firearm within his reach. On the other hand, the woman who approached him stood outside the home (and thus seemingly safely away from Hoover). The other women present (one making a cellphone video, another tending to a small child) did not appear injured or in need of immediate aid. Further eliminating any threat, Hoover raised his arms to show Due that he did not have a weapon in his hands. On these facts, I agree that "there is room for a difference of opinion" over whether Due had exigent circumstances to enter Hoover's home. *Jones*, 874 F.2d at 1130. Under our longstanding precedent, then, this claim must go to a jury. *Id.*

That conclusion leaves qualified immunity. The majority opinion reasonably rejects Due's qualified-immunity defense under our precedent. It correctly recognizes that we have often denied qualified immunity based on the general rule "that warrantless entry into a home without an exception to the warrant requirement" violates the Fourth Amendment. *Reed*, 80 F.4th at 745 (quoting *Barton*, 949 F.3d at 949). And it correctly recognizes that we have also denied qualified immunity based on cases that have found nothing more than "room for a difference of opinion" on the exigent-circumstances question. *Goodwin*, 781 F.3d at 332 (citation omitted). And unlike in another recent exigent-circumstances case, I see no basis to distinguish this precedent here. *See Howell v. McCormick*, __ F.4th __, 2025 WL 2434620, at *6–7 (6th Cir. Aug. 25, 2025).

All told, I concur in the majority opinion because our precedent dictates its result. But it may be time to reevaluate that precedent in an appropriate case.